BROWN v SPITZA

1. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—SEAT BELTS—INSTRUC-
TIONS TO JURY.

The trial judge properly refused to give a requested jury instruc-
tion regarding contributory negligence for failure to wear a
seat belt where no allegation of a requirement to wear a seat
belt was made and the failure to wear a seat belt was never
really an issue in the case.

2. AUTOMOBILES—EVIDENCE—INSURANCE—APPEAL AND ERROR.

Interjection by defendants in an automobile-negligence case of
the fact that plaintiffs had some form of an insurance coverage
regarding their injuries and damages when defendants were
attempting to provide the necessary foundation for the admis-
sion of a photograph, showing the damage to one of the in-
volved vehicles, which was taken by a representative of plain-
tiffs' insurer, was not so prejudicial as to entitle the plaintiffs to
a new trial where the reference to such an insurance coverage
was not pursued beyond the limits of the necessary foundation.

3. TRIAL—QUESTION FROM JURY.

The trial judge will not be held to have erred in his interpreta-
tion of a submitted jury question to him and his response to
such a question where he gave the question one of two perfectly
logically supportable interpretations and where after he gave
the additional instruction the unanimous reply of the jurors
was that the additional instruction answered their submitted
question.

4. AUTOMOBILES—SUDDEN EMERGENCY—INSTRUCTIONS TO JURY.

In an automobile negligence case involving a rear-end collision,
the trial judge properly instructed the jury by reading the
"rear-end" statute and explaining its applicability absent sud-
den emergency and then instructing the jury to apply the

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 8 Am Jur 2d, Automobiles and Highway Traffic § 1023.
[2] 7 Am Jur 2d, Automobile Insurance § 127.
[3] 53 Am Jur, Trial § 904.
[5] 53 Am Jur, Trial § 8.

sudden emergency doctrine if in its determination the defendant driver was subjected to a sudden emergency, because the doctrine of sudden emergency is a logical extension of the reasonably prudent person rule.

5. TRIAL—MEDICAL WITNESSES—AUTOMOBILES—WITNESSES NOT NAMED—PRETRIAL SUMMARIES.

It was proper to allow the testimony of a medical witness called at trial but not named as a witness to be called where the pretrial summary clearly provided that defendants preserve the right to call any and all doctors who have examined and or treated plaintiff.

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 January 8, 1973, at Detroit. (Docket No. 13141.) Decided February 22, 1973. Leave to appeal denied, 389 Mich 816.

Complaint by Mabel Brown and Elmer Brown against Charlene Zimmerman Spitza, John Zimmerman, and Frances Zimmerman, for damages resulting from an automobile accident. Judgment for defendants. Plaintiffs appeal. Affirmed.

*August, Thompson & Sherr, P. C.,* for plaintiffs.

*Martin, Bohall, Joselyn, Halsey & Rose, P. C.,* for defendants.

Before: J. H. GILLIS, P. J., and BASHARA and O'HARA,* JJ.

O'HARA, J. This is an automobile negligence case. Plaintiffs Mabel and Elmer Brown are husband and wife. Defendant Charlene Zimmerman Spitza was the driver of the vehicle owned by her father and mother which was being operated with their knowledge and consent.

As in most motor-vehicle negligence cases the

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

factual allegations of the parties are in sharp conflict.

Plaintiff's wife claims she was faultlessly stopped at an intersection on a two-lane northbound highway. She alleges she was in her proper left-hand lane with her left-turn directional signal on when she was struck from the rear by defendant's vehicle. She, of course, claims the benefit of the so-called "rear-end-collision" statute.[1] Her husband's claim is his derivative action for loss of consortium.

Defendant driver, on her own behalf and for the owners against whom vicarious liability is asserted, claims she too was faultlessly proceeding in the same direction as plaintiff who suddenly and without reason or signal stopped short of the intersection, thus occasioning the collision.

Trial was to a jury. It found for the defendants. Plaintiffs moved alternatively for judgment *n.o.v.* or for a new trial. The motion was denied. From this denial plaintiffs appeal of right.

Before us, plaintiffs assign eight errors. None is the oft-heard complaint that the verdict was against the great weight of evidence nor that the issue of negligence was improperly submitted to the jury. Rather the assignments of error go to claimed erroneous instructions, an erroneous reply to a jury request to the trial judge for "clarification", the improper reference to alleged insurance payments to plaintiff, and a question relating to a voir dire answer vis-a-vis answers made on the jury questionnaire. Much in the way of appellate disposition depends on the precise language used in the voir dire questions and answers and the wording of the answer to an inquiry on the jury questionnaire, the phrasing of the question to the

---

[1] MCLA 257.402; MSA 9.2102.

judge by the jury, and the claimed improper reference to insurance. We shall have to quote extensively from the record and thus extend the length of this opinion despite our realization of library space limitations to accommodate our reports. We will not treat the assignments of error *seriatim* but rather in the order which we hope will make our opinion more readable.

We dispose of the first somewhat summarily. It concerns the questionnaire and the voir dire answer. We note, because the practice is more the rule than the exception, that when a question as stated on review contains in its premise the necessary conclusion or legal answer, the reviewing court must necessarily change the form of the question. We quote plaintiff's assigned error number III.

## QUESTION III

*Did the fact that one of the jurors gave a false or misleading answer during voir dire questioning prevent plaintiffs from having a trial by a fair and impartial jury?*

Quite obviously if it *is* a fact that a juror gave a false or misleading answer on voir dire, defendant was just as obviously denied a fair trial. The question really is: Did the juror do so, not what the effect of so doing is legally.

This is what happened: When the prospective jurors in this case were being examined in the voir dire the trial judge asked them:

"*The Court:* Have you ever suffered personal injury from any car accident other than Juror No. 2? Have you ever suffered personal injury from any car accident?"

*(Negative response by jury.)*

The judge also inquired:

*"The Court:* Have you ever had a situation where you were driving and there was an accident and someone claimed injury?

*(Negative response by jurors.)*

*"The Court:* Have you ever been in a car, though you were not the driver, where there was an accident in which someone claimed an injury?"

*(Negative response by jurors.)*

Juror Bernetta Winn was not in the specific group being examined at this point but she was present in the courtroom.

*"The Clerk:* No. 53, Bernetta Winn.

*"The Court:* You have been in the courtroom during this period of questioning. You have heard all the questions and answers?

*"Juror No. 7:* Right."

With regard to car accidents the court then inquired of Juror Winn:

*"The Court:* Have you ever had an accident while you were driving from which someone claimed injury?

*"Juror No. 7:* No.

*"The Court:* Have you ever been in a car, although not the driver, where there was an accident and someone claimed injury?

*"Juror No. 7:* No.

*"The Court:* Has anyone filed against you for personal injury?

*"Juror No. 7:* No.

*"The Court:* Have you ever filed a claim for personal injury out of a situation, whether there was an automobile accident or not?

*"Juror No. 7:* No."

Juror Winn, on her juror personal history questionnaire, gave the following response to the question "Have you ever been in an accident?"

"Yes—February 22, 1971—Three car collision on icy expressway ramp."

Mrs. Winn described her injuries as "minor" and stated that no one else was injured.

It seems clear to us that the whole thrust of the trial court's questioning went to the question of injury in an automobile for which a claim was made on behalf of or against the prospective jurors.

The fact that the juror was involved in a minor accident, for which no claim was made against her or in consequence of which she made no claim for damage, in no way was inconsistent with her answers on voir dire nor with her answer on the questionnaire. We find no substance in this assignment of error.

Next we consider the error asserted because the trial judge refused an instruction concerning the fact that plaintiff was not wearing a seat belt and that there was no obligation to do so, as that lack of obligation bore on the issue of her contributory negligence.

We find no merit in the claim. No allegation was made that she was obligated to wear a seat belt. The only advertence to the subject was a volunteered statement contained in answer to a question not involving seat belts at all. The plaintiff merely mentioned that she had unfastened the belt because it was rubbing on a relatively recent surgical scar. The requested instruction was properly denied. The lack of a seat belt was never really an issue in the case.

Assignment IV concerns the proscribed refer-

ence to insurance in the case. As we read the whole body of controlling law on this subject, the Supreme Court, as mandatorily followed by this Court, has disallowed reference to the fact that a defendant was covered by insurance on the theory that a jury would award greater damage against an insured motorist than against one not insured. This whole body of law as well as the statute is inapplicable to the case at bar.

In this case it was the defendant's counsel who brought out the fact that plaintiff was insured, and thus presumptively received some payment from plaintiff's insurer. The relevant testimony is herewith set forth. Defense counsel was examining the hospital records librarian.

> "*Q. [By Mr. Halsey, defense counsel]:* Could you tell us from your records who paid the bills?
> "*Mr. Sherr:* Objection, your Honor.
> "*The Court:* I will sustain the objection."

A little farther on, when cross-examining plaintiff Elmer Brown concerning damage to Brown's car, defense counsel showed him a picture of the car and asked him:

> "*Q. [By Mr. Halsey]:* And did you take that picture, sir?
> "*A.* I didn't take this picture.
> "*Q.* Do you know who did take the picture?
> "*A.* I presume that the insurance company—
> "*Mr. Sherr:* Your Honor, I would like to object. The reason that we had the discussion during the break before.
> "*The Court:* The answer is stricken. Next question.
> "*Q. (By Mr. Halsey, continuing):* Now, does this show the damage to your car? It is taken a little further away.
> "*A.* He was further back when he took it.

"*Q.* Were you present when he took it?

"*A.* I wouldn't say definitely I was, but I would say that he was the one that took it.

"*Q.* All right. In other words, you apparently—do you recall pointing out to the person who took the pictures that that was the damage to your car?

"*A.* Well, he told me where he was from, the fellow that took the picture.

"*Mr. Sherr:* Your Honor, we are going through this whole thing and counsel is trying in a different way to get to the area that we talked about and your Honor has instructed him in the whole area.

"*The Court:* Well, what went on in the absence of the jury cannot be disclosed. I will permit questions along this line but I have already cautioned counsel for both parties on certain matters and he was warned that the court will take strong and effective action if they do not conform with my rulings and at the risk of that confrontation, I hope we don't get to that point.

"Next question.

"*Mr. Halsey:* I would like to offer this picture in evidence at this time since your client has identified this as his car showing the damage possibly present and a little further back from the picture.

"Do you have any objection?

"*Mr. Sherr:* We have no objection."

The question is really whether plaintiffs were prejudiced by reference to the fact that some insurance payments had been made to them. Appellants phrase the assignment of error this way:

*Did defendants commit reversible error by placing before the jury, through direct and indirect questioning of witnesses, the inclusion of insurance payments to plaintiffs?*

It is difficult to see how plaintiffs were prejudiced by the court's ruling. If anyone was prejudiced, or adversely affected, it was defendants. If

plaintiffs had in fact assigned part of their claim after partial payment by their own insurer, defendants were entitled to inquire into the matter as it bore upon who was the real party in interest. The trial court thought otherwise and ruled adversely to defendants. The trouble with this area of law is that insurers, who in fact do the investigating, in fact choose the counsel, in fact pay the judgment, in fact pay deductible property-damage claims and in some instances some medical and hospital expenses, are much more the "real party in interest" than the named insured. Mayhap someday our Supreme Court will address itself to the question, and mayhap by rule or decision eliminate this ridiculous "cat and mouse game" about the fact of insurance which plagues trial courts and often this Court on review. The whole concept is an anachronism dating back to the days when various types of insurance on motor vehicles was the exception and not the rule. In the interim there have come into being uninsured-motorist coverage, the Motor Vehicle Accident Claims Act (MCLA 257.1101 *et seq.;* MSA 9.2801 *et seq.*), and the requirement of insurance coverage to a limited extent. For the purpose of this case we hold (1) that the interjection of the insurance coverage came into the case in an attempt to provide the necessary foundation for the admission of the photograph of the damage to one of the involved vehicles; it was not pursued beyond the limits of the necessary foundation; it was not prejudicial and (2) if this question is the subject of further review the error claimed was not preserved by a motion for a mistrial on that specific ground.

We now proceed to what we consider the most serious question presented on appeal. During its deliberation the jury, through the court officer,

submitted a question to the trial judge. We quote the record.

"We feel we have come to [a] conclusion on this case. We have a question as to the—can we recommend all medical expenses incurred be reimbursed to Mr. Brown since October 14, 1967 through May 3, 1971? This should include all:
1. Doctor bills;
2. Hospital bills;
3. Consultation fees and hospital;
4. Medication;
5. Housekeeping;
6. Auto repair and additional $5,000 for any future medication or must we specify a definite amount?"

The trial court apparently interpreted this question to be an inquiry as to the form of the verdict. He addressed himself to counsel out of the presence of the jury.

"I think they are making inquiry to the form of the verdict and I would properly tell them something like this and I would do it in the alternative of looking down the middle of the room.

" 'Question, if you find for the plaintiff it is necessary that you reduce your findings or verdict to a lump sum for each of the plaintiffs as you so find.

" 'If you find for the defendant the form of the verdict is no cause of action.'

"I think they are inquiring as to the items of the verdict; I think that's what they are saying."

Plaintiff's counsel had the following comment:

"*Mr. Sherr:* Judge, if I might add another comment or two with regard to that. It strikes me the way the request is worded: 'Can we recommend all medical expenses? That should include all—etc., etc., or must we set a definite amount?'

"It seems to me that to suggest 'no cause of action' is something that is not contemplated by the note and might cause undue emphasis in that regard."

The trial court gave the following response to the jury's question:

*"The Court:* Ladies and gentlemen of the jury, the court has been advised through the bailiff and has had the assistance of discussion and expression from able counsel for the respective parties.

"The court construes your inquiry as to inquire as to the form of the verdict and I will therefore instruct you as follows:

"If you should find for the plaintiff the form of the verdict would be 'we find for the plaintiff' and you must reduce that verdict as to each of the plaintiffs to a lump sum in dollars and cents, at least as to dollars as to each.

"If you should find for the defendant the form of the verdict is 'we find for the defendant, no cause of action'.

"Does that answer your inquiry?

*"The Jury (In unison):* Yes.

*"The Court:* Very well, you may retire to your jury room and resume your deliberations."

It seems to us apparent that the question submitted by the jury is open to two perfectly logically supportable interpretations. First, that the jury had decided that plaintiff had prevailed and the inquiry was limited to the form the award should take. The other is that defendants had prevailed, and that Mabel Brown had been no-caused but that the jury would like to "recommend" special damages for her husband irrespective of that fact. It is manifest we cannot ever know with absolute certainty what was in the mind of each of the jurors. We have to make a most difficult choice. We cannot say the trial judge erred reversibly in his interpretation because of

the unanimous reply of the jurors that the additional instruction answered their submitted question.

Next we consider the assignment of error relating to the "sudden emergency" doctrine. Defendant contended the instruction should be given. Plaintiffs that it should not. The following colloquy among court and counsel took place:

"*The Court:* * * * Now, that takes us to 4. I have a compromise charge on the rear-end statute and the sudden emergency and I will give it together.

"*Mr. Sherr:* With regard to the sudden emergency, we would object to that being included on the ground that there is no showing of legal sudden emergency.

"*The Court:* What is a legal sudden emergency?

"*Mr. Sherr:* Well, the case law that I have read indicates that it had to be something extremely extraordinary and unusual and I will submit that the facts thus far do not support that.

"*The Court: I think it is a jury question.* I will decline that." (Emphasis supplied.)

We agree with the trial judge. Plaintiff-driver testified point-blank she was lawfully stopped at an intersection and was struck from the rear. Defendant-driver testified plaintiff's vehicle stopped suddenly and without reason or signal in front of her.

The ways of juries often confound courts. We simply say what has been said times without number before. We might not have reached the same conclusion as the jury, but we cannot substitute our judgment for theirs on questions of fact where competent evidence supports both versions. We think the trial judge did what had to be done. He read the "rear-end statute" and explained its applicability absent sudden emergency. He then instructed the jury to apply that doctrine if in its

determination defendant was subjected to a sudden emergency. This accords with our understanding of the most recent Supreme Court holding on the subject: "the doctrine of sudden emergency is a 'logical extension of the "reasonably prudent person" rule' ". *Szymborski v Slatina,* 386 Mich 339, 341 (1971). This in substance is what the trial judge charged. We find no reversible error.

As to the admissibility of the testimony of the medical witness not named as a witness to be called, he fell clearly within the proviso of the pretrial summary. The pretrial summary provided:

"Both parties will be permitted to call whatever witnesses they believe to possess pertinent information. * * * Defendants reserve the right to add or delete from the above-named witnesses depending upon proofs presented by plaintiffs at time of trial. *Defendants further preserve the right to call any and all doctors who have examined and/or treated plaintiff per MSA 27.2157 [sic]."*[2] *(Emphasis supplied.)*

We have examined assignments of error VII and VIII concerning claimed erroneous instructions as to aggravation of a previously sustained injury and additional instructions as to applicable statutes.

As to the first the trial judge would have been hard put to reconcile such instruction with plaintiff-driver's testimony that she enjoyed relatively good health before the collision. The statutes had been properly included in the charge and we find no error in the supplement thereto.

Finding no reversible error in the case, we are required to affirm the denial of the motion for a new trial and award costs to defendant-appellee.

We commend both counsel upon their comprehensive briefs and oral presentation.

All concurred.

---

[2] MCLA 600.2157; MSA 27A.2157.