VAN EVERY v SOUTHEASTERN MICHIGAN TRANSPORTATION
AUTHORITY

Docket No. 77163. Submitted January 17, 1985, at Detroit.—Decided
March 13, 1985. Leave to appeal applied for.

Plaintiffs, Caribel and Robert Van Every, brought an action
against defendant, Southeastern Michigan Transportation Au-
thority, for damages for injuries allegedly suffered by plaintiff
Caribel Van Every. The Wayne Circuit Court, Irwin H. Bur-
dick, J., entered a judgment on a jury verdict of no cause of
action. Plaintiffs appealed, alleging that the trial court erred in
refusing to reread a Standard Jury Instruction in which the
court omitted the word "disability", in allowing a doctor called
by defendant to read Ms. Van Every's medical chart and
admitting the chart into evidence, and in denying their motion
for a directed verdict on the issue of serious impairment of
body function, and that defense counsel's closing argument was
improper. *Held:*

1. Generally, a Standard Jury Instruction must be given if it
is properly requested, applicable, and accurately states the law.
While a deviation from the Standard Jury Instruction has
generally required reversal, it is not required where the devia-
tion is such that it is clear that no prejudice could have
resulted.

2. The doctor, Ms. Van Every's gynecologist, was properly
allowed to testify even though he was not listed in the pretrial
summary. The defendant had preserved the right to call "plain-
tiff's treating and examining doctors".

3. Various portions of the doctor's testimony from the medi-
cal chart, and the chart itself, were admissible under various
exceptions to the hearsay rule. While there may have been
error in admitting into evidence the doctor's testimony concern-
ing the diagnoses denoted in the chart, the error was harmless.

4. Plaintiffs failed to properly preserve the issue of defense

REFERENCES FOR POINTS IN HEADNOTES
[1] 76 Am Jur 2d, Trial § 576 *et seq.*
[2] 62 Am Jur 2d, Pretrial Conference §§ 20, 21.
[3] 29 Am Jur 2d, Evidence §§ 498, 876, 877.
[4] 40 Am Jur 2d, Hospitals and Asylums § 43.

counsel's improper argument by requests for curative instructions or by a motion for mistrial.

5. The court did not err in denying plaintiffs' motion for a directed verdict on the issue of serious impairment of body function, since there was a dispute as to the cause and extent of Ms. Van Every's injuries.

Affirmed.

1. TRIAL — JURY INSTRUCTIONS — DEVIATION FROM STANDARD JURY INSTRUCTION.

A Standard Jury Instruction must be given at trial if it is properly requested, is applicable, and accurately states the law; however, a slight deviation from the standard instruction does not require reversal where it is clear that no prejudice could have resulted from the deviation.

2. WITNESSES — UNLISTED WITNESS.

A medical witness may be allowed to testify for a defendant, even though not named as a witness in the pretrial summary, where the defendant has preserved the right to call "any and all doctors who had examined or treated plaintiff".

3. EVIDENCE — HEARSAY — PAST RECOLLECTION RECORDED.

A writing, otherwise hearsay, may be read into evidence as a past recollection recorded where it is shown that: (1) the witness has no present recollection of the facts, (2) the witness's memory is not refreshed upon reference to the writing, (3) the writing is an original memorandum made by the witness from personal observation, (4) the writing was prepared contemporaneously with the event and was an accurate recording of the event, and (5) the substance of the writing is otherwise admissible (MRE 803[5]).

4. EVIDENCE — HEARSAY — BUSINESS RECORDS.

A medical chart made upon the treatment of a patient may be admissible into evidence under the business records exception to the hearsay rule but, while general descriptions of a physical condition are admissible, a diagnosis is not (MRE 803[6]).

*Zeff, Zeff & Materna (by Howard J. Radner), and Charles P. Reisman, for plaintiff.*

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C. (by Robert G. Kamenec), for defendant.*

Before: CYNAR, P.J., and BEASLEY and R. E. ROB-
INSON,* JJ.

PER CURIAM. Plaintiffs, Caribel Van Every and
Robert Van Every, appeal as of right from a
judgment of no cause of action rendered in favor of
defendant, Southeastern Michigan Transportation
Authority (SEMTA), on a jury verdict.

On appeal, plaintiffs raise four issues. First,
plaintiffs claim that the trial court erred in deny-
ing their request to reread SJI 50.03. The trial
court instructed the jury as follows:

"You should include each of the following elements of
damage which you decide has been sustained by the
plaintiff to the present time: Physical pain and suffer-
ing, mental anguish, fright and shock, denial of social
pleasures and enjoyments, the loss or impairment of the
neck and back, the loss of earning capacity.

"You shall also include each of the following ele-
ments of damage which you decide has been sustained
by the plaintiff that the plaintiff is reasonably certain
to sustain in the future. That will be the physical pain
and suffering, mental anguish, denial of social pleasure
and enjoyments, the impairment of the neck and back
and the loss of earning capacity."

Plaintiff's counsel objected, claiming that the trial
court omitted the word "disability" from the in-
struction:

"*Mr. Radner:* Judge, there was, I think it was 50.02.
"*The Court:* What is that/ *[sic]*
"*Mr. Radner:* 50.03, elements of damage, disability
and disfigurement. You said the loss or impairment of
the neck or back. The problem is it should say disabil-
ity, including the loss or impairment of the neck or

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment.

back. What you said was the loss or impairment of the neck or back. I just want that read over.

"*The Court:* I'm not going to read it over. they *[sic]* got the context.

"*Mr. Radner:* I told them what I thought the elements were in my closing argument.

"*The Court:* First of all, I didn't notice it. You've got your cards up there, and they have no business being up there while I'm charging the jury. I don't know whether I used the word disability of *[sic]* did not, but I'm not going to repeat it."

The proper instruction reads as follows:

"You should include each of the following elements of damage which you decide has been sustained by the plaintiff to the present time: a. (physical pain and suffering) b. (mental anguish) c. (fright and shock) d. (denial of social pleasure and enjoyments) e. (embarrassment, humiliation or mortification) the (disability including the loss or impairment of the neck and back and the loss of earning capacity).

"You should also include each of the following elements of damage which you decide plaintiff is reasonably certain to sustain in the future: a. (physical pain and suffering) b. (mental anguish) c. (fright and shock) d. (denial of social pleasure and enjoyments) e. (embarrassment, humiliation or mortification) the (disability including the loss or impairment of the neck and back and the loss of earning capacity)." See SJI2d 50.01, 50.02, and 50.03.

On appeal, plaintiffs contend that the trial court's omission of the word "disability" from the instruction and its failure to correct itself constitute reversible error pursuant to *Javis v Ypsilanti Bd of Ed.*[1] The general rule is that, if requested, Michigan Standard Jury Instructions must be given if they are applicable and accurately state

---

[1] 393 Mich 689; 227 NW2d 543 (1975).

the law.[2] The *Javis* Court adopted a strict rule to be applied when the trial court omits or deviates from an applicable and accurate standard jury instruction:

"Where there is an omission of, or a deviation from an applicable and accurate SJI, prejudicial error will be presumed; provided that the erroneously omitted SJI was properly requested at trial; and, provided that in those cases where error is charged as a result of a deviation from a SJI, said deviation was brought to the attention of the trial court prior to the commencement of jury deliberations." *Javis, supra,* pp 702-703.

In *Citizens National Bank of Cheboygan v Mayes,*[3] referring to *Javis,* we said: "This test presumes prejudice; it does not allow for a rebuttable presumption." Thus, where the omitted instruction (1) applies under the facts of the case as tried, (2) is accurate, and (3) is requested, this Court has usually reversed.[4]

In this case, defendant argues primarily that the deviation does not constitute prejudicial error, saying that (1) the term "disability" is a generic term for the loss or impairment of the neck and back; (2) the jury, by finding that plaintiff did not suffer a serious impairment of the body function, never determined the amount of damages pursuant to SJI2d 50.03; (3) reversal based upon a deviation from SJI2d 50.03 would constitute an absurd result; and (4) there is only a rebuttable presumption that prejudicial error results from a deviation from SJI2d 50.03.

---

[2] *Villar v E W Bliss Co,* 134 Mich App 116; 350 NW2d 920 (1984); *Scalabrino v Grand Trunk Western R Co,* 135 Mich App 758; 356 NW2d 258 (1984); GCR 1963, 516.6.

[3] *Citizens National Bank of Cheboygan v Mayes,* 133 Mich App 808, 810, fn 1; 350 NW2d 809 (1984).

[4] *Id.*

In *Snow v Freeman,*[5] we said that while "[s]ome-times it would appear that, rather than serving the good purpose for which it was intended, the strict rule of *Javis* causes injustices", and that if the *Javis* rule is to be moderated, the high court should do so. We further said in *Snow* that the high court had not chosen to take the opportunity, citing 412 Mich 909; 315 NW2d 125 (1982), where the Supreme Court denied leave to appeal. Additionally, the *Javis* Court acknowledged that the strict rule will at times constitute wasted efforts:

"It is our judgment at this time that the Court should put its supervisory authority behind the consistent and uniform application of the SJI and hence we adopt a strict standard for SJI errors. Whatever wasted effort that will result from the reversal of those few cases wherein a trial court erroneously deviates from the SJI will be overcome by the benefits of conserved trial court time at the instruction stage, certainty to trial counsel as to how the law will be stated to the jury, and a clear and concise instruction for the jury to work with." *Javis, supra,* p 699.

Ten years have now passed since *Javis* was decided. Part of the purpose of *Javis* was to impress trial judges that the Standard *Civil* Jury Instructions were mandatory and must be followed. A long enough period has now passed for that purpose to be accomplished. We believe that the time has come to relax the inflexibility of the *Javis* rule in cases such as this where it is perfectly clear that no prejudice to plaintiffs could have resulted from the slight omission from the standard instruction. For these reasons, we believe plaintiffs' extensive arguments for reversal may be rejected.

---

[5] 119 Mich App 677, 681; 326 NW2d 602 (1982), *lv den* 418 Mich 874 (1984).

Second, plaintiffs claim that the trial court erred in allowing the doctor called by defendant to read Ms. Van Every's medical chart to the jury and in allowing the chart's introduction into evidence. In the within case, defendant sought to have Ms. Van Every's gynecologist, Dr. Pickens, testify. Although defendant's witness list did not specifically list Dr. Pickens, it did inform plaintiffs that defendant intended to call "plaintiff's treating and examining doctors". As defendant points out, plaintiffs should have been on notice that Dr. Pickens was a treating physician of Ms. Van Every, since plaintiffs' counsel, in their answers to defendant's interrogatories, had identified Dr. Pickens as a physician by whom Ms. Van Every was examined since February 26, 1980. Additionally, plaintiffs, in their witness list, reserved the right to call "all witnesses indicated in the Answers to Interrogatories and Depositions". Dr. Pickens was listed in plaintiffs' answers to interrogatories.

Further, this Court has permitted the testimony of medical witnesses not named as witnesses in the pretrial summary if the defendant had "preserve[d] the right to call any and all doctors who [had] examined and/or treated plaintiff".[6] Thus, while Dr. Pickens was not specifically named as a witness in the pretrial summary, he clearly falls within the proviso of defendant's witness list which reserved the right to call "plaintiff's treating and examining doctors". Since plaintiffs were impliedly on notice concerning Dr. Pickens's testimony, there was no error in allowing him to testify.

Plaintiffs also contend that the testimony of Dr. Pickens regarding Ms. Van Every's medical chart lacks proper foundation and constitutes inadmissi-

---

[6] *Brown v Spitza,* 45 Mich App 97, 109; 206 NW2d 260 (1973), *lv den* 389 Mich 816 (1973).

ble hearsay, since most of the medical entries were not made by him and since he was allowed to read entries concerning Ms. Van Every's diagnosis. Dr. Pickens testified that the medical chart was used for treating Ms. Van Every, who was his patient from the summer of 1980 through the fall of 1981. He stated that Ms. Van Every's September 22, 1977, visit, as denoted on the chart and of which Dr. Pickens had no independent knowledge, indicated that she had complained of sudden chest pains on and off for the past month and that she was diagnosed as having anxiety reaction and not coronary insufficiency. The October 24, 1977, office note diagnosed a sprained right shoulder. Dr. Pickens indicated that the December 8, 1977, note revealed that plaintiff hurt her back and experienced dizzy spells. The November 14, 1976, entry indicated that plaintiff complained of dizziness and nerves. The March 29, 1977, notation indicated that plaintiff had a white discharge and lower back and abdominal pain. The November 30, 1979, notation was partially illegible. The legible part did not make any mention of an automobile accident. The June 24, 1980, notation indicated that plaintiff complained of pain to her right ankle and was diagnosed as having a contusion. The October 24, 1980, notation indicated that she was admitted to Harper-Grace Hospital by Dr. Pickens for diagnostic evaluation and that she had an ongoing complaint of lower abdominal pain. The diagnosis was a sprained ankle, ruling out fracture. The October 13, 1981, notation made by Dr. Pickens diagnosed plaintiff as suffering from chronic pelvic pain.

Defendant contends that the chart itself, as well as the testimony of Dr. Pickens from the chart, constitute an exception to the hearsay rule pursuant to MRE 803(5), which provides:

"(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

This Court has adopted the following prerequisites for the admission of a record pursuant to this exception, as set forth in the case of *Jaxon v Detroit:* [7]

"To qualify a writing otherwise objectionable as hearsay to be admitted in evidence as a past recollection recorded, a proper foundation must be laid. That foundation should consist in the following: (a) a showing that the witness has no present recollection of the facts, (b) a showing that the witness' memory is not refreshed upon reference to that document, (c) a showing that the document is an original memorandum made by the witness from personal observation, (d) a showing that the document was prepared by the witness contemporaneously with the event and was an accurate recording of the occurrence and, (e) a showing that the substance of the proffered writing is otherwise admissible."

The chart herein complained of, with the exception of Dr. Pickens's October 13 and 24, 1980, entries, was not based on Dr. Pickens's personal observations. Rather, the chart was based upon examinations conducted by undisclosed and unknown persons. Thus, since there was no showing that the chart (with the exception of the two entries by Dr. Pickens) is the original memorandum made by the witness from his personal observations or that the document was prepared by the

---

[7] 379 Mich 405, 413; 151 NW2d 813 (1967).

witness contemporaneously with the event and was an accurate recording of the occurrence, the foundational elements pursuant to MRE 803(5) have not been established. Therefore, contrary to defendant's assertion, the chart itself, as well as the testimony of Dr. Pickens from the chart, did not constitute an exception to the hearsay rule pursuant to MRE 803(5). Dr. Pickens's testimony, however, concerning his October 13 and 24, 1980, entries would fall within the exception.

Defendant also contends that the testimony of Dr. Pickens falls within the business record exception to the hearsay rule, MRE 803(6), which provides:

"(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, or events, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

In the within case, Dr. Pickens testified that the chart is from the Britemore Medical Center which is a free-standing medical clinic offering medical treatment to patients. Thus, it can be inferred that the chart was made upon the treatment of Ms. Van Every, that it was made at or near the time of her treatment by or transmitted from a person with knowledge, that it is the practice of the Britemore Medical Center to keep medical records

and that it was made in the course of regularly conducted business at Britemore. Therefore, the chart itself falls within the business record exception to the hearsay rule.

Under MCL 600.2146; MSA 27A.2146, which was the precursor to the present rule, hospital records were admissible as business entries if they recorded "events and acts, such as admissions, discharges, and ministrations in the hospital, although they are not ordinarily admissible as a means of introducing medical history or diagnosis".[8] Accordingly, while general descriptions of a physical condition are admissible under the statute, a diagnosis is not.[9]

In *Carbonell v Bluhm*,[10] this Court stated:

"The language of MRE 803(6) varies from that of the Federal Rule 803(6) in a way that is determinative to this case. The Michigan rule applies to 'acts, *transactions, occurrences,* or events'; the federal rule applies to 'acts, events, *conditions, opinions, or diagnoses'.* (Emphasis added.) The Michigan rule is narrower in scope than its federal counterpart. Michigan apparently has chosen to exclude medical diagnosis from the business record exception, MRE 803(6)."

Thus, the testimony of Dr. Pickens concerning the diagnoses contained in the chart was technically inadmissible.

Alternatively, MRE 803(4) provides that "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment" qualify as hearsay exceptions. This exception applies to statements made by the patient concerning his physical condition, symptoms or medical his-

[8] *Carbonell v Bluhm,* 114 Mich App 216, 227-228; 318 NW2d 659 (1982), *lv and reconsideration den* 417 Mich 871 (1983).

[9] *Id.*

[10] *Id.,* p 228.

tory. Thus, the statements made by Ms. Van Every concerning her complaints fall within this exception.

In passing, defendant asserts that plaintiffs' counsel failed to properly object to having Dr. Pickens read the medical diagnosis and, thus, failed to properly preserve this issue for appeal. At Dr. Pickens's deposition, however, plaintiffs' counsel constantly objected, since such testimony was without proper foundation and constituted hearsay.

In conclusion, while there may have been error in admitting into evidence and permitting the doctor's testimony concerning the diagnoses denoted in the chart, we cannot see any harm to plaintiffs' case thereby of a magnitude requiring reversal. The notations concerning Ms. Van Every's complaints constitute statements concerning her physical condition, symptoms or medical history and are admissible pursuant to MRE 803(4). Also, the doctor's testimony concerning his October 13 and 24, 1980, entries are admissible pursuant to MRE 803(5).

Third, plaintiffs argue that they were prejudiced by defense counsel's closing argument. A request for a curative instruction to the jury or a motion for mistrial is requisite to the right of appellate review of a claim of attorney misconduct, unless the misconduct "may have caused the result or played too large a part and may have denied a party a fair trial".[11] In this case, plaintiffs did not move for a mistrial. In some instances of alleged misconduct by defendant's counsel, a defense objection was sustained by the trial judge. In others, no objection was raised. In most, no error occurred.

[11] *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 103; 330 NW2d 638 (1982); *Koepel v St Joseph Hospital,* 381 Mich 440, 442-444; 163 NW2d 222 (1968).

In conclusion, plaintiffs go to great lengths to prove that defense counsel, in his closing argument, deliberately misstated the evidence to prejudice the jury against plaintiffs. First, most of these alleged errors were not objected to. Second, the only actual misstatement of the evidence concerned the number of months Dr. Weisman treated Ms. Van Every. This disparity between "a few months" and eight months, however, does not constitute prejudicial error. Review of defense counsel's closing argument does not show that a "course of misconduct was so persistently followed that a charge of the court in an effort to obviate the prejudice would have been useless".[12]

Fourth, plaintiffs claim that the trial court erred in denying their motion for directed verdict on the issue of serious impairment of body function.

In *Cassidy v McGovern*,[13] the Supreme Court held that the meaning of "serious impairment of a body function" contained in MCL 500.3135; MSA 24.13135 is a matter for determination by the court as a matter of law:

"We hold that when there is no factual dispute regarding the nature and extent of a plaintiff's injuries, the question of serious impairment of body function shall be decided as a matter of law by the court. Likewise, if there is a factual dispute as to the nature and extent of a plaintiff's injuries, but the dispute is not material to the determination whether plaintiff has suffered a serious impairment of body function, the court shall rule as a matter of law whether the threshold requirement of MCL 500.3135; MSA 24.13135 has been met."

The trial court denied plaintiffs' motion for a

---

[12] *Reetz, supra,* p 112, quoting *Steudle v Yellow & Checker Cab & Transfer Co,* 287 Mich 1, 12; 282 NW 879 (1938).

[13] 415 Mich 483, 502; 330 NW2d 22 (1982), *reh den* 417 Mich 1104 (1983).

directed verdict on the issue of serious impairment of a body function. In considering a motion for a directed verdict, the trial court should view the evidence in the light most favorable to the non-moving party.[14] Considering the evidence in the light most favorable to defendant, we are satisfied that the trial court correctly refused to grant plaintiffs' motion.

First, the medical chart from which Dr. Pickens read contained entries which pre-dated the accident and which noted that Ms. Van Every had complained even then of back pains and was diagnosed as suffering from a sprained right shoulder. The entries after the accident note that she complained of pain in her right ankle one month after the accident and of lower abdominal pain. The medical chart makes no mention of a car accident. It could be assumed that if Ms. Van Every complained of pain in her ankle, she would have similarly complained of pain due to the automobile accident, pain in her neck and back and of headaches. Further, reasonable minds could differ as to whether she would have complained of her injuries from the accident to her gynecologist. Also, as defendant points out, it is reasonable to conclude that Dr. Pickens would have noticed her alleged injury to her coccyx, considering its relative proximity to those areas routinely examined by a gynecologist. Furthermore, her alleged fractured coccyx was diagnosed on April 16, 1982, two- and one-half years after the August 26, 1979, accident. There was no record of complaints concerning this fracture during this two- and one-half year period. Therefore, there appears to be a dispute as to the cause of Ms. Van Every's fracture as well as to the

---

[14] *Argenta v Shahan,* 135 Mich App 477, 488; 354 NW2d 796 (1984); *In re Acquisition of Virginia Park,* 121 Mich App 153; 328 NW2d 602 (1982).

nature and extent of her injuries. Also, the credibility of both Ms. Van Every and the doctor were put directly in issue. Thus, viewing the evidence in the light most favorable to defendant, the nonmoving party, the trial court correctly denied plaintiffs' motion for a directed verdict.

Affirmed.