ESPARAZA v MANNING

Docket No. 81193. Submitted October 3, 1985, at Lansing.—Decided January 21, 1986.

A Cheboygan Circuit Court jury awarded plaintiff, Nora Esparaza, a judgment for noneconomic losses under the no-fault act in the amount of $15,000, together with costs, interest and mediation attorney fees, against defendant, Russell Manning. Defendant moved for summary judgment before the trial contending that plaintiff had not sustained injury amounting to serious impairment of body function as a matter of law. Defendant again raised the issue in a motion for directed verdict at the close of plaintiff's proofs. Plaintiff sought a partial summary judgment before the trial on the same issue. The trial court, Robert C. Livo, J., denied all three motions. Defendant appealed as of right. *Held:*

1. The trial court properly decided as a matter of law that plaintiff sustained serious impairment of body function. The evidence showed that plaintiff suffered fractured ribs in the accident and continued to experience limitations in reaching, turning and lifting and must resort to pain medication as needed.

2. Plaintiffs' closing and rebuttal arguments did not impress the Court of Appeals as a course of argument deliberately calculated to unfairly prejudice the jury. Defendant was therefore not denied a fair trial because of those arguments.

3. The verdict did not doubly compensate plaintiff for her injuries by way of exemplary damages.

4. The trial court did not err in refusing to grant a mistrial. Plaintiff did not deliberately inject any reference to insurance into the trial proceedings.

5. The trial court did not err in allowing plaintiff to elicit testimony from law enforcement officers as to the circumstances surrounding their investigation of the scene of the

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340 *et seq.*

What constitutes sufficiently serious personal injury, disability, impairment, or the like to justify recovery of damages outside of no-fault automobile insurance coverage. 33 ALR4th 767.

accident, including their conclusions that defendant was intoxicated. Such evidence was both relevant and material.

Affirmed.

1. INSURANCE — NO-FAULT ACT — TORT LIABILITY — SERIOUS IMPAIRMENT OF BODY FUNCTION.

Whether an injury is a serious impairment of body function under the no-fault act so as to give rise to tort liability for noneconomic loss is a question of statutory construction to be decided by the trial court; where there is no factual dispute regarding the nature and extent of a plaintiff's injuries or where a factual dispute is not material to the determination, the court must decide as a matter of law whether the plaintiff has suffered a serious impairment of body function (MCL 500.3135; MSA 24.13135).

2. INSURANCE — NO-FAULT ACT — TORT LIABILITY — SERIOUS IMPAIRMENT OF BODY FUNCTION — NEGLIGENCE.

Where a trial court determines as a matter of law that a plaintiff has sustained serious impairment of body function, the court is simply removing the shield of immunity created by the no-fault act which would otherwise insulate a defendant from tort liability for noneconomic loss; a ruling in plaintiff's favor on the serious impairment issue means nothing more than that the plaintiff may proceed to trial with a traditional negligence claim; a plaintiff retains the burden of proving that the defendant breached a duty owed the plaintiff and thereby proximately caused the plaintiff's damages (MCL 500.3135; MSA 24.13135).

*Lyon & Hackett* (by *Michael J. Hackett*), for plaintiff.

*Lindsay & Lindsay* (by *Christopher F. Lindsay*), for defendant on appeal.

Before: M. J. KELLY, P.J., and ALLEN and R. M. SHUSTER,* JJ.

M. J. KELLY, P.J. Defendant appeals as of right from a judgment entered pursuant to a jury verdict in favor of plaintiff for noneconomic losses sustained in a motor vehicle collision. Plaintiff

---

* Circuit court judge, sitting on the Court of Appeals by assignment.

obtained a judgment of $15,000, together with costs, interest and mediation attorney fees. We affirm.

On April 4, 1982, plaintiff was a passenger in her motor vehicle, operated by Edmund Trstenjak, who was traveling northbound on M-27, one-half mile south of Cheboygan, Michigan. Weather conditions were poor, with snow falling off and on, causing low visibility. Defendant was driving a wrecker in the southbound lane at approximately 35 miles per hour when he crossed the center line and collided with plaintiff's automobile.

Defendant was described as intoxicated by law enforcement officials who arrived at the scene. He was arrested for operating a motor vehicle while under the influence of alcohol, MCL 257.625; MSA 9.2325, and was subsequently convicted of the lesser offense of impaired driving, MCL 257.625b; MSA 9.2325(2).

Plaintiff was taken by ambulance from the scene of the accident to a hospital, where she was admitted for observation and treatment of six fractured ribs, as well as cuts, soreness and bruises. Plaintiff experienced difficulty breathing due to pain in her thorax caused by the broken ribs. She was hospitalized for three days because of her physician's fear that one of the fractured ribs might puncture a lung and cause it to collapse. Upon her release from the hospital, plaintiff wore a rib belt and neck brace and was unable to perform any normal activities for a period of about two months.

In July of 1982, plaintiff returned to her job as a production worker at Hygrade Foods in Livonia, Michigan. Plaintiff, at age 56 as of the date of trial, continues to experience limitations in reaching, turning and lifting and must resort to pain medication as needed.

Plaintiff filed this lawsuit for noneconomic dam-

ages claiming that defendant's negligence had proximately caused her injuries. Defendant responded that plaintiff's action must fail as a matter of law because the injuries sustained do not rise to the level of serious impairment of body function as required under MCL 500.3135; MSA 24.13135. Defendant raised this issue in a motion for summary judgment prior to trial and in a motion for directed verdict at the close of plaintiff's proofs. Plaintiff similarly sought a ruling on this issue by moving for partial summary judgment prior to trial. All three motions were denied but it is only the trial court's refusal to grant a directed verdict which is the subject of this appeal.

Whether plaintiff has sustained serious impairment of body function was properly treated below as a matter of law to be decided by the trial court. *Cassidy v McGovern,* 415 Mich 483, 502; 330 NW2d 22 (1982), *reh den* 417 Mich 1104 (1983). We infer, from the record before us, however, an element of confusion regarding the nature and effect of rulings under *Cassidy,* particularly where, as here, plaintiff establishes serious impairment and is allowed to proceed to trial. For example, the trial court denied defendant's pretrial motion for summary judgment on the serious impairment issue not because there were disputed issues of material fact but because plaintiff had in fact and in law established serious impairment of body function. Yet the trial court later denied plaintiff's motion for partial summary judgment on this same threshold issue, finding simply that "there was a question of fact".

In a similar vein, the court denied defendant's motion for a directed verdict after considering plaintiff's evidence and finding: (1) that plaintiff's injuries were objectively manifested, (2) that plaintiff's injuries were serious and (3) that plaintiff's

injuries interfered with the important body function of locomotion. See *Cassidy, supra; Williams v Payne,* 131 Mich App 403, 409; 346 NW2d 564 (1984). Based on these findings, the court concluded that plaintiff had suffered serious impairment of body function, yet commented that plaintiff had produced sufficient evidence to go to the jury.

We are concerned that the Supreme Court's decision in *Cassidy* has been interpreted in such a way as to blur the distinction between threshold rulings of serious impairment and substantive decisions on the merits of the underlying tort claims in actions arising under the no-fault act. It is perhaps useful to reiterate that when a trial court determines as a matter of law that a plaintiff has sustained serious impairment of body function, the court is simply removing the shield of immunity created by MCL 500.3135; MSA 24.13135, which would otherwise insulate the defendant from tort liability. 415 Mich 498-499. A ruling in a plaintiff's favor on the serious impairment issue means nothing more than that the plaintiff may proceed to trial with a traditional negligence claim. A plaintiff retains the burden of proving that the defendant breached a duty owed the plaintiff and thereby proximately caused the plaintiff's damages.[1] See *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977); *May v Parke, Davis & Co,* 142 Mich App 404, 411; 370 NW2d 371 (1985).

[1] It is conceivable that a plaintiff who survives a motion for summary judgment under *Cassidy v McGovern, supra,* and proceeds to trial on the negligence claim may, nevertheless, obtain a verdict of no cause of action. This could occur where a plaintiff does not prove defendant's negligence or where a plaintiff does not prove a causal relationship between the injuries and the accident. An interesting question is whether a no cause verdict may stand based on a plaintiff's failure to prove damages, which would seemingly conflict with the trial court's serious impairment ruling. Inasmuch as the question is at this point hypothetical we venture no opinion as to the answer.

With this background, we now review the trial court's refusal to grant defendant a directed verdict in this case for plaintiff's failure to establish serious impairment of body function. It is undisputed that plaintiff sustained six broken ribs as a result of the accident. Her physician testified about the nature and extent of those injuries, including potential lung complications and the treatment required to avoid them. Defendant does not dispute the factual presentation of plaintiff's injuries. Unlike in most serious impairment cases which reach this Court, defendant did not present any expert testimony assessing the nature and extent of the injuries offered by plaintiff. The only evidence introduced by defendant at trial related to the reasonableness of defendant's behavior on the night of the accident.[2]

The injuries sustained by plaintiff in this case are very similar to the injuries sustained by the plaintiff in *Range v Gorosh (After Remand)*, 140 Mich App 712-718; 364 NW2d 686 (1984), which we concluded "were sufficiently serious to meet the threshold requirement contained in MCL 500.3135;

---

[2] This case is unusual in the sense that it does not involve a dispute between or among medical experts offering conflicting interpretations of the nature and extent of plaintiff's injuries. In *Kelleher v Kuchta*, 138 Mich App 45; 359 NW2d 224 (1984), I stated in a concurring opinion that in reviewing motions for summary judgment under *Cassidy, supra*, the courts should determine whether reasonable minds may differ on whether the injuries sustained constitute serious impairment of body function. Where reasonable minds might differ, I concluded that the case should be submitted to the trier of fact.

This reasonable minds approach appears to me to be useful and appropriate where, as often occurs, the injuries sustained are not actually disputed but the nature and extent of those injuries are subject to different interpretations by testimony of witnesses, who are usually experts. Typically, these cases involve competing medical expert testimony differently interpreting the actual effect of the injuries on a plaintiff's ability to function. Where a trial court's finding of serious impairment will turn on which medical expert it believes, the case should be submitted to the trier of fact. The trial court might then reserve its serious impairment ruling pending the jury's resolution of the credibility contest between the experts.

MSA 24.13135". We thus hold that the trial court did not err as a matter of law in concluding that plaintiff met the threshold requirement of serious impairment of body function and should be allowed to proceed to trial on her negligence claim. *Guerrero v Schoolmeester,* 135 Mich App 742, 748; 356 NW2d 251 (1984); *Williams v Payne, supra.*[3] We now turn to the remainder of defendant's claims on appeal.

Upon thorough review of plaintiff's closing and rebuttal arguments, we are not persuaded that defendant was denied a fair trial as the result of several comments made by plaintiff's attorney. As the trial court observed in denying defendant's motion for mistrial, plaintiff's comments all fell within the fair ambit of closing argument. Plaintiff's use of terms such as "appalling", "inexcusable incident", "real sin", and "Nora's plight" does not impress us as a course of argument deliberately calculated to unfairly prejudice the jury. See *Reetz v Kinsman Marine Transit Co,* 415 Mich 97; 330 NW2d 638 (1982); *Van Every v SEMTA,* 142 Mich App 256, 267-268; 369 NW2d 875 (1985).

Defendant next argues that the damages award must be vacated on the ground that the jury was allowed to doubly compensate plaintiff for her injuries by awarding exemplary damages and compensatory damages for pain, suffering and mental distress, contrary to *Veselenak v Smith,* 414 Mich 567; 327 NW2d 261 (1982). Our review of the record does not persuade us that the jury's verdict need be disturbed in this case.

At the close of plaintiff's proofs, defendant moved for a directed verdict on plaintiff's claim for

---

[3] We further believe that the trial court should have granted plaintiff's motion for partial summary judgment prior to trial. Since the case was submitted to the jury just as though plaintiff's motion had been granted, we see no need to pursue this line of inquiry.

exemplary damages as set forth in her complaint. The trial court denied defendant's motion, briefly stating that the evidence was sufficient to allow the question to be submitted to the jury. Based on the arguments presented for and against the motion by both attorneys, we presume that the trial court found the evidence, if believed, sufficient to show that defendant's misconduct was gross, wilful, wanton or reckless. In closing argument, plaintiff's attorney asked for damages on behalf of plaintiff for past and future pain, suffering and mental distress in the amount of $38,200. At the very close of his argument, counsel further stated:

"I want you to take these facts, these concepts, these ideas into consideration. Shock Russ. Get him out of his denial. Get him into a situation where he acknowledges that there's a wrong done here. The only way we have to do that is by dollars. I can suggest to you that you add an additional twenty thousand dollars to say there's a wrong done here. It's a reckless, willful, and wanton act. I could suggest to you that you add an additional two hundred thousand dollars. Somehow this issue has to come before Russ Manning. Somehow he has to recognize that Nora didn't do anything wrong, and Nora didn't ask for the pain that she had to put up with then and now. You're the only ones who can help us."

The trial court did not instruct on exemplary damages and instead limited its damages instructions as follows:

"You should include each of the following elements of damage which you decide has been sustained by the plaintiff to the present time: (A) physical pain and suffering, (B) mental anguish, (C) fright and shock, (D) denial of social pleasure and enjoyment. You should also include each of the following elements of damage which you decide plaintiff is reasonably certain to sus-

tain in the future: (A) physical pain and suffering, (B) mental anguish, (C) fright and shock, (D) denial of social pleasure and enjoyment.

"If any element of damage is of a continuing nature, you shall decide how long it may continue. If an element of damage is permanent in nature, than you shall decide how long the plaintiff is likely to live. Which, if any, of these elements of damage have been proved is for you to decide based upon evidence and not upon speculation, guess or conjecture. The amount of money to be awarded for certain of these elements of damage cannot be proven in a precise dollar amount. The law leaves such amount to your sound discretion."

Following closing arguments and jury instructions, defendant again objected to what he termed plaintiff's request for punitive damages, and the trial court at that point agreed that the jury should not be allowed to award punitive or exemplary damages. The court then prepared a supplemental verdict form to be submitted to the jury in the event it returned a verdict in favor of plaintiff. Upon delivering its verdict, the jury was sent back to consider "[w]hat if any part of the damage was awarded to punish Russell Manning?" The jury returned with its answer, "[n]one". Given the lack of any instruction as to exemplary damages and given the jury's response to the supplemental verdict form, we agree with the trial court that the verdict rendered did not doubly compensate plaintiff for her injuries.

Defendant also moved for a mistrial on the ground that plaintiff had deliberately injected insurance into the trial proceedings. However, we find no violation of MCL 500.3030; MSA 24.13030, which prohibits reference to an insurance carrier or to the insured status of any party. In this case, defendant's attorney first referred in closing argument to "Michigan's no-fault law". In rebuttal,

plaintiff responded to the point made by defendant's attorney and simply referred to the "no-fault insurance law". The trial court did not err in refusing to grant a mistrial on this basis.

Finally, the trial court did not err in allowing plaintiff to examine three law enforcement officials as to the circumstances surrounding their investigation of the scene of the accident, including their conclusions that defendant was intoxicated. The court had earlier granted defendant's motion *in limine* to exclude all evidence of defendant's conviction for impaired driving. The jury was never apprised of that conviction. Moreover, the jury was given a limiting instruction regarding evidence of defendant's arrest. Since one of the issues submitted to the jury was whether defendant negligently caused the accident by driving while intoxicated, testimony as to his appearance at the scene of the crime was both relevant and material. MRE 402.

Affirmed.