## MORROW v SHAH

Docket No. 102012. Submitted July 11, 1989, at Grand Rapids. Decided December 28, 1989.

Ricky L. Morrow, Kim A. Williams, individually and as next friend of Ricky D. Williams, and others brought a malpractice action against Mukund Shah, M.D., and Memorial Hospital in the Berrien Circuit Court. The Department of Social Services and the Attorney General were permitted to intervene to press a Medicaid subrogation claim. All plaintiffs settled but DSS and the Attorney General. Memorial Hospital made a motion in limine seeking 1) a ruling that intervening plaintiffs were precluded from calling expert witnesses, either as part of their case or for purposes of rebuttal, as a sanction for noncompliance with a pretrial conference order, and 2) a ruling that the state did not have any statutory subrogation or other right as a matter of law to seek damages for anticipated medical expenses to be incurred in the future and paid out of Medicaid benefits. The court, Ronald J. Taylor, J., granted the motion and DSS and the Attorney General appealed by leave granted.

The Court of Appeals *held:*

1. The imposition of a sanction was improper, since it was based on an order made before DSS was made a party to the suit and, under the circumstances of the case, imposition of such a sanction would work a manifest injustice.

2. The court properly held that DSS could not seek damages for anticipated future Medicaid payments. Dss's claim is one of subrogation, a prerequisite for which is payment of an obligation.

Affirmed in part, reversed in part, and remanded.

Social Services — Subrogation — Medicaid — Future Expenses.

The Department of Social Services may not seek reimbursement as a subrogee for anticipated but unpaid Medicaid benefits covering expenses to be incurred in the future (MCL 400.106[1][b][ii]; MSA 16.490[16][1][b][ii]).

References

Am Jur 2d, Damages § 584; Welfare Laws §§ 38, 39.

See the Index to Annotations under Damages; Medicaid; Subrogation.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Michael J. Fraleigh,* Assistant Attorney General, for the Department of Social Services and Attorney General.

*Fette, Dumke & Passaro, P.C.* (by *Thomas R. Fette*), for defendant.

Before: MICHAEL J. KELLY, P.J., and WAHLS and HOLBROOK, JR., JJ.

HOLBROOK, JR., J. This interlocutory appeal is brought by intervening plaintiffs, Michigan Department of Social Services and the Attorney General, in pursuit of statutory subrogation rights for Medicaid benefits paid or payable on behalf of Ricky D. Williams. Plaintiffs instituted suit against defendants Mukund Shah and Memorial Hospital for personal and other injuries alleged to have been sustained in consequence of defendants' malpractice committed in the course of medical care given to Williams. All parties, including intervening plaintiffs, engaged in settlement negotiations, and the original plaintiffs and defendants eventually agreed to terms of settlement with the result that plaintiffs' claims were dismissed by stipulation. Because DSS would not agree to a settlement, its subrogation claim is all that remains to be adjudicated.

Defendant Memorial Hospital filed a motion in limine relating primarily to its disputes with DSS. In the motion, it sought: (1) a ruling that intervening plaintiffs were precluded from calling expert witnesses, either as part of their case or for purposes of rebuttal, as a sanction for noncompliance with a pretrial conference order; and (2) a ruling that the state did not have any statutory subrogation or other right as a matter of law to seek damages for anticipated medical expenses to be

incurred in the future and paid out of Medicaid benefits. The order of the circuit court granting the requested relief in both respects is now challenged by DSS in this appeal.

I

The order entered by the circuit court summarizing a pretrial conference on May 27, 1986, established that the parties were to disclose lists of their expert witnesses by August 1, 1986, and of experts expected to be called for rebuttal purposes by October 15, 1986. At the time of the pretrial, DSS was not a party to the suit. On behalf of DSS, the Attorney General filed its appearance on August 20, 1986, and a motion to intervene on September 23, 1986. Pursuant to the parties' stipulation, the circuit court granted intervention pursuant to MCR 2.209(A) in its order entered on October 13, 1986. Thus, sanctions for DSS's noncompliance are premised on witness disclosure requirements imposed at a pretrial conference in which DSS could not have participated because it was not a party at that time. By the time that intervention was granted, the first deadline for disclosure of witnesses had already lapsed, and timely compliance with the second deadline was virtually impossible.

Imposition of sanctions under these circumstances is highly dubious in light of provisions of MCR 2.401 governing pretrial conferences. An order summarizing actions taken at the pretrial must be served on all parties. MCR 2.401(C)(1). Clearly, the notice function envisioned by this provision is frustrated when the attainment of status as a party occurs after the pretrial. The overall tenor of MCR 2.401 suggests that, to the extent possible, the decisions governing future

conduct of the proceedings are to be taken by consensus of the parties or by the judge's decision informed by the input of the parties' attorneys. Obviously, DSS's unavoidable absence precluded any participation on its part. We note that the decisions made at the pretrial conference are subject to later modification in order "to prevent manifest injustice." MCR 2.401(C)(4).

We do not decide whether it is per se improper to apply a pretrial order to a person subsequently made a party to the action, although the nonparty status at the time of the pretrial should be an important consideration in the court's discretionary decision whether to subsequently modify the pretrial order. Our decision to reverse the court's ruling in limine is based on the impropriety of the witness preclusion sanction in view of the specific circumstances of this case. We believe that a contrary ruling is necessary to prevent manifest injustice. See *Pastrick v General Telephone Co of Michigan,* 162 Mich App 243, 245; 412 NW2d 279 (1987) ("[t]rial courts should not be reluctant to allow unlisted witnesses to testify where justice so requires, particularly with regard to rebuttal witnesses").

The proofs and theory of liability of DSS, being plaintiffs' subrogee, would ordinarily be expected to parallel plaintiffs' own case against defendants. Plaintiffs had previously disclosed their intent to utilize those witnesses that DSS now seeks to call as part of its case. Thus, defendants were on implied notice, if not actual notice, of the witnesses and nature of proofs that would constitute DSS's case at trial. On the other hand, in a medical malpractice action of this nature, DSS will be largely dependent upon this testimony and cannot have a fair adjudication without it. Penalizing DSS by excluding it from calling expert witnesses is too

harsh a sanction for a shortcoming that is, at most, technical in nature. Given the totality of the circumstances, particularly the absence of any indication that defendants will be forced to undergo a trial by surprise or to incur other unfair prejudice, the order precluding DSS from calling expert witnesses in its case in chief is an abuse of discretion. See *Stepp v Dep't of Natural Resources,* 157 Mich App 774, 779; 404 NW2d 665 (1987), lv den 429 Mich 860 (1987); *Van Every v Southeastern Michigan Transportation Authority,* 142 Mich App 256, 262; 369 NW2d 875 (1985), lv den 424 Mich 891 (1986).

We similarly conclude that, in order to prevent manifest injustice, DSS should be given further opportunity to disclose any expert witnesses to be called for rebuttal purposes, subject to the discretionary power of the court to set appropriate and reasonable conditions alleviating prejudice, if any, to defendants arising from the belated disclosure. See *Pastrick, supra.* Whether or not witnesses called for rebuttal are in fact testifying as experts rather than medical witnesses testifying only to their own personal observations (and therefore not encompassed by the terms of the pretrial order) is for the trial court to decide in the first instance.

II

All parties agreed that DSS had paid $332,176.44 in Medicaid benefits on Williams' behalf as of December of 1986, and the Attorney General advises that substantially more had been paid as of the date of its appellate brief. Because DSS anticipates that Williams' needs for medical care to be covered by Medicaid after the conclusion of this litigation will be ongoing and substantial, it is attempting to obtain reimbursement for antici-

pated future Medicaid benefits out of any present source of recovery attributable to satisfaction of plaintiffs' tort claim against defendants. As noted previously, the circuit court ruled that DSS's statutory right of subrogation was confined to amounts already paid.

Dss's right of subrogation is provided by MCL 400.106(1)(b)(ii); MSA 16.490(16)(1)(b)(ii), which states in pertinent part:

> The department shall be subrogated to any right of recovery which a patient may have for the cost of hospitalization, pharmaceutical services, physician services, nursing services, and other medical services not to exceed the amount of funds expended by the department for the care and treatment of the patient. The patient or other person acting in the patient's behalf shall execute and deliver an assignment of claim or other authorizations as necessary to secure the right of recovery to the department. . . . If a payment is made, the department, to enforce its subrogation right, may (i) intervene or join in an action or proceeding brought by the injured, diseased, or disabled person, the person's guardian, personal representative, estate, dependents, or survivors, against the third person who may be liable for the injury, disease, or disability, or against contractors, public or private, who may be liable to pay or provide medical care and services rendered to an injured, diseased, or disabled patient or (ii) institute and prosecute legal proceedings against a third person who may be liable for the injury, disease, or disability, or against contractors, public or private, who may be liable to pay or provide medical care and services rendered to an injured, diseased, or disabled patient, in state or federal court, either alone or in conjunction with the injured, diseased, or disabled person, the person's guardian, personal representative, estate, dependents, or survivors. . . . An action taken by the state or the department in connection with the right of recovery

afforded by this section shall not operate to deny the injured, diseased, or disabled person any part of the recovery beyond the costs expended on the person's behalf by the department.

We hold that DSS may not seek reimbursement for anticipated but unpaid Medicaid benefits covering expenses to be incurred in the future.[1] Our holding is based on two primary considerations: the wording of the statute and general principles of subrogation.

The statute speaks in terms of past payments only. The state's subrogation rights are "not to exceed the amount of funds expended by the department for the care and treatment of the patient." The state's authorization to pursue litigation asserting its subrogation rights is triggered only "[i]f a payment is made." When the state does pursue litigation, it may not infringe upon the Medicaid claimant's right to "any part of the recovery beyond the costs expended on the person's behalf by the department." MCL 400.106(1)(b)(ii); MSA 16.490(16)(1)(b)(ii). Dss's reimbursement rights are premised upon benefits phrased solely with reference to the past tense. Nothing suggests that DSS may pursue recovery for benefits to be paid in the future. In fact, some of the statutory phrases just noted would appear to affirmatively prohibit what DSS seeks in this case.

General principles of subrogation are also inconsistent with recovery of anticipated expenses yet to be incurred. Although the question at hand is one of statutory construction, employment by the stat-

---

[1] Our holding is limited to a situation where DSS has exercised its statutory right to intervene in a Medicaid recipient's action against a third-party tortfeasor and the original parties have agreed to settle the recipient's claim. We express no opinion whether DSS has any other viable remedy for vindicating its right of reimbursement against the recipient's recovery from a third-party tortfeasor.

ute of the term "subrogation" suggests that it is intended to incorporate common-law subrogation principles. See *Thornton v Allstate Ins Co,* 425 Mich 643, 648; 391 NW2d 320 (1986). Regardless of whether a right of subrogation arises by operation of law or by contractual agreement, the controlling general principles are the same: the subrogee, upon paying an obligation owed to the subrogor as the primary responsibility of a third party, is substituted in the place of the subrogor, thereby attaining the same (and no greater) rights to recover against the third party. See *Allstate Ins Co v Snarski,* 174 Mich App 148, 154-155; 435 NW2d 408 (1988), lv den 432 Mich 883 (1989). Payment of the subrogated debt or liability is a prerequisite to attaining subrogation rights. *Poynter v Aetna Casualty & Surety Co,* 13 Mich App 125, 128; 163 NW2d 716 (1968) ("[u]ntil the insurer has paid the claim, it has no subrogation right"); *Associated Truck Lines v Employers' Fire Ins Co of Boston, Mass,* 275 Mich 74, 76; 265 NW 780 (1936) ("[s]ubrogation rights follow and do not precede payment"); *Earl Dubey & Sons, Inc v Macomb Contracting Corp,* 97 Mich App 553, 559; 296 NW2d 582 (1980), lv den 410 Mich 897 (1981) ("[t]he right to subrogation accrues upon payment of the debt"). As a general matter, past payments of the obligation define subrogation rights and fix the extent of amounts to be claimed pursuant to those rights. Although we are not aware of any Michigan authority squarely holding that the right of subrogation may not extend to future as well as previously paid expenses, the foregoing principles afford no support for subrogation of future obligations.

Our holding also finds support in *Milan v Kausch,* 194 F2d 263 (CA 6, 1952), where an insurance company paid workers' compensation benefits on behalf of the insured's injured employee,

thereby becoming subrogated to the employee's rights in negligence law against a third-party tortfeasor. The amount of benefits paid was $2,369.48, which was less than the $3,000 jurisdictional limit of the federal court. The insurance company and the insured employer asserted an entitlement to a recovery in tort in excess of $10,000 in an attempt to satisfy this jurisdictional limit. Noting that Michigan law limited recovery "to the extent of the amounts paid in discharge of the obligation assumed by the subrogee," *id.*, p 265, the court rejected the plaintiffs' argument that their claim would satisfy the jurisdictional limit.[2] Although it is not clear whether the plaintiff's claim for amounts in excess of their own payments was based on future expenses, the court did cite case law from another jurisdiction addressing that issue. The reasoning in *Milan* impels the conclusion that subrogation rights cannot extend to future expenses anticipated by the subrogee.

We also note the practical difficulties of allowing DSS to recover anticipated Medicaid benefits. To do so would require a projection of the recipient's future entitlement to Medicaid benefits. Unlike the far-from-certain computation of future damages for personal injuries allowed in tort law, problems of determining future entitlement to governmental benefits are compounded by the need to determine whether the recipient will meet various eligibility criteria over an indefinite future time span. The task is of such complexity that it would strain the faculties of the factfinder to make

---

[2] The statute construed in *Milan* has been substantially amended since the date of that decision, and the holding in *Milan* is largely irrelevant for purposes of workers' compensation law in light of the present statute. See MCL 418.827(5); MSA 17.237(827)(5). Obviously, our citation to *Milan* is for the purpose of illustration of the workings of subrogation principles, not for any statement regarding workers' compensation law.

any determination bearing a rational connection to the proofs.

Dss claims that provisions of Subchapter XIX of the Social Security Act establishing the Medicaid program authorize recovery for future Medicaid benefits. Our review of the relevant federal statutes and regulations does not persuade us of the merit of this argument. Federal law mandates that the state "seek reimbursement for such assistance to the extent of such legal liability," 42 USC 1396a(a)(25)(C), and "take reasonable measures to determine the legal liability of third parties to pay for services furnished under the plan," 42 CFR 433.138(a). Nowhere do we see any indication that the federal scheme attempts to redefine or alter a cause of action for reimbursement afforded by state law. Nothing is cited to us for the proposition advanced by DSS that the federal requirements extend to present recovery of future Medicaid benefits or even contemplate an appropriate procedure when this situation arises.

In any event, the provisions of federal law are not intended to be directly enforceable in litigation determining the rights of DSS relative to individual recipients and responsible third parties. Rather they define the minimum requirements that each state must adopt as a condition to participation in the federal program. Whether and to what extent DSS may seek recovery from third-party tortfeasors is to be determined with reference to MCL 400.106(1)(b)(ii); MSA 16.490(16)(1)(b)(ii), upon which we rely in this decision.

Affirmed in part, reversed in part, and remanded.