*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

JEANETTE PETERSON, by Guardian DONNELL
JOHNSON and Conservator ELLA M. BULLY-
CUMMINGS, and PAYTON PETERSON, JAXON
JOHNSON, HUNTER JOHNSON, ISAIAH
JOHNSON, by their Next Friend, DONNELL
JOHNSON,

　　　　　　Plaintiffs-Appellees,

and

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

　　　　　　Intervening Plaintiff-Appellant,

v

OAKWOOD HEALTHCARE, INC., doing business
as BEAUMONT HOSPITAL-DEARBORN,
JONATHAN LEISCHNER, D.O., and HEATHER
KATHAWA, PA-C,

　　　　　　Defendants-Appellees.

FOR PUBLICATION
March 11, 2021
9:10 a.m.

Nos. 353314; 353353
Wayne Circuit Court
LC No.  17-016009-NH

Before:  LETICA, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

These consolidated appeals[1] arise out of plaintiff Jeanette Peterson's medical malpractice claims against defendants.  After plaintiffs and defendants settled, the Department of Health and

---

[1] *Peterson v Oakwood Healthcare, Inc*, unpublished order of the Court of Appeals, entered July 15, 2020 (Docket No. 353353).

-1-

Human Services (DHHS) intervened and sought reimbursement for Medicaid expenses. In Docket No. 353314, the DHHS appeals as of right the trial court's order that denied the DHHS's motion for relief from judgment and granted plaintiffs' motion for sanctions against the DHHS. In Docket No. 353353, the DHHS appeals by delayed leave granted[2] the trial court's order approving the distribution of proceeds from plaintiffs and defendants' settlement.

On appeal, the DHHS argues that the trial court erred when it (1) imposed sanctions against the DHHS for filing a frivolous motion, (2) did not allow the DHHS to recover from the portion of the settlement attributed to future medical expenses, (3) reduced the DHHS's share of the recovery by a pro rata amount, and (4) reduced the DHHS's share to offset or pay for some of plaintiffs' attorney fees. We affirm.

## I. PROCEDURAL HISTORY

On August 18, 2016, Jeanette went to the emergency room at Beaumont Hospital in Dearborn, complaining of a headache since the prior evening. Jeanette informed a certified physician's assistant that she was also feeling central chest heaviness and shortness of breath. The supervising emergency room physician obtained Jeanette's electrocardiogram (EKG or ECG) that showed an anteroseptal infarct, age-determined abnormal ECG. Laboratory results also showed Jeanette had a potassium level of 3.1 millimoles per liter. Later in the day, Jeanette informed the certified physician's assistant that her symptoms had improved, and she was discharged.

One month later, Jeanette experienced a full cardiac arrest and was unresponsive. She was taken to the emergency room at Henry Ford-Wyandotte Brownstown. At the hospital, she had a potassium level of 2.5 millimoles per liter, and potassium replacement therapy was initiated. As a result of the cardiac arrest, Jeanette suffered severe hypoxic or anoxic, or both, encephalopathy.

Thereafter, plaintiffs filed a complaint in the trial court that alleged the emergency room physician and the certified physician's assistant breached their respective standard of care. The DHHS then filed a motion to intervene, asserting that it had a statutory right to cover the $146,285.12 for medical services that it had paid thus far for Jeanette through Medicaid. The DHHS also asserted that it had a statutory right to be first in priority to recover any proceeds in the event of a settlement or judgment in Jeanette's favor. The trial court granted the DHHS's motion to intervene.

At some point, plaintiffs and defendants reached a confidential settlement agreement.[3] Plaintiffs moved for an evidentiary hearing to determine the lienholders' share of the settlement proceeds. Plaintiffs asserted that the settlement only represented a "minor portion" of Jeanette's overall damages, so the DHHS was entitled to a pro rata share of the settlement. The DHHS contended that it was entitled to recover the full amount of medical expenses up to the amount of

---

[2] *Id.*

[3] Because the terms of the settlement agreement are confidential and have been sealed by the trial court, apart from the values of the liens asserted by the DHHS and Molina, we will not state the values provided in the settlement agreement.

the settlement that was properly allocated to medical expenses. According to the DHHS, the settlement amount was to be apportioned into two components, the amount attributable to medical expenses and the amount attributable to nonmedical expenses, and the DHHS was entitled to all of the medical expenses up to the amount of its lien.

At the evidentiary hearing, the parties stipulated to the total value of plaintiffs' case and the amount of Jeanette's medical expenses. The DHHS argued that because the amount of the medical expenses was 65% of the total value, then 65% of the settlement amount should be allocated toward the medical expenses. Accordingly, the DHHS asserted that it could recover all of its $268,357.33 lien because 65% of the settlement greatly exceeded its lien. Plaintiffs argued that Jeanette's future medical expenses encompassed nearly all of the total medical expenses, while the DHHS's lien for past medical expenses represented only 1% of the total medical expenses. Accordingly, plaintiffs asserted that the DHHS was only entitled to 1% of the medical portion of the settlement.

The trial court determined that because the settlement was 21.25% of the total value of plaintiffs' case, the DHHS was only entitled to 21.25% of its lien, or $57,025.93.[4] Although plaintiffs suggested that the amount that the DHHS was entitled to may have to be reduced because of costs and attorney fees, the trial court declined to do so and noted that the amount awarded was "more than reasonable." Following a hearing where plaintiffs approved the settlement distributions, the trial court stated that it would grant the final distribution once the final order was presented to it.

Three days later, on December 16, 2019, the trial court signed the order distributing the settlement. On February 11, 2020, the DHHS filed a motion for relief from judgment under MCR 2.612(C)(1)(a) and (f). Counsel for the DHHS argued that he never received notice that the final order had been entered on December 16, 2019. Counsel averred that he had checked the online status a least four times between December 17, 2019 and January 15, 2020, but did not see that the order had been entered. Counsel only learned that the order had been entered when he called the court's clerk to check the status on January 15, 2020. The DHHS argued it was entitled to relief from judgment because (1) a recently published decision of this Court, *Byrnes v Martinez*, 331 Mich App 342; 952 NW2d 607 (2020), vacated in part ___ Mich ___; 949 NW2d 723 (2020), showed that the trial court had erred, and (2) the DHHS never received notice of the order's entry, which deprived the DHHS an opportunity to appeal as of right.

Plaintiffs responded that the court's e-filing system clearly showed that counsel for the DHHS was notified of the order, and that the copy of the register of actions that the DHHS attached to its motion also showed that the order was signed and filed on December 16, 2019. Plaintiffs argued that counsel for the DHHS merely failed to act, which was not a proper ground for relief from judgment. Plaintiffs also asserted that the DHHS's motion was frivolous and requested the imposition of sanctions. Furthermore, the DHHS could not obtain relief on the basis of *Byrnes* because the case was not available at the time of the order.

---

[4] The trial court also determined that the lien of Molina Health Care, a contracted health plan, was similarly reduced by 21.25%.

The trial court determined that the DHHS could not rely on *Byrnes* because the case was not approved for publication until February 4, 2020, nearly two months after the trial court entered the order approving the distributions. Moreover, the order "appeared in the e-Filing system" and the register of actions. Therefore, the trial court found no reason to grant the DHHS's motion for relief from judgment. Additionally, the trial court found that the motion was frivolous and ordered the DHHS to pay sanctions in the amount of $4,000 to plaintiffs and $2,000 to defendants. These appeals followed.

## II.  SANCTIONS

In Docket No. 353314, the DHHS argues that the trial court erred when it found that the DHHS's motion for relief from judgment was frivolous and granted sanctions to the opposing parties. We disagree.

This Court reviews a trial court's decision to award sanctions for a frivolous filing for an abuse of discretion. *Sprenger v Bickle*, 307 Mich App 411, 422-423; 861 NW2d 52 (2014). A trial court abuses its discretion when the decision to sanction a party is outside the range of principled outcomes. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 659-660; 819 NW2d 28 (2011). But any of the trial court's factual findings, including a finding of frivolousness, are reviewed for clear error. *Sprenger*, 307 Mich App at 423. A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake was made. *American Alternative Ins Co, Inc v York*, 252 Mich App 76, 80; 650 NW2d 729 (2002), aff'd 470 Mich 28 (2004).

The DHHS's motion for relief from judgment relied on MCR 2.612(C)(1)(a) and (f), which provide:

> (1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:
>
> (a) Mistake, inadvertence, surprise, or excusable neglect.
>
> * * *
>
> (f) Any other reason justifying relief from the operation of the judgment.

The DHHS's motion was predicated on two theories: (1) a recently published decision of this Court showed that the trial court had erred, and (2) the DHHS never received timely notice of the entry of the December 16, 2019 final order, which deprived it of an opportunity to appeal to this Court as of right.

Regarding the newly published case, because it was not in existence at the time the trial court made its decision,[5] the purported failure to follow it cannot be construed as a "mistake" under MCR 2.612(C)(1)(a). Accordingly, we must consider whether the DHHS's motion should have been granted under MCR 2.612(C)(1)(f). However, this Court has stated that "relief from judgment under MCR 2.612(C)(1)(f) is inappropriate where a party has not sought appellate review of a trial court's final order and the basis for relief from judgment is a subsequent appellate decision in a different case." *Farley v Carp*, 287 Mich App 1, 8; 782 NW2d 508 (2010). See also *Kidder v Ptacin*, 284 Mich App 166, 171; 771 NW2d 806 (2009) ("The interests of justice truly militate against allowing a defeated party's action to spring back to life because others have availed themselves of the appellate process."). The situation described by the *Farley* Court is precisely the situation here. At the time DHHS filed its motion for relief from judgment, it had not sought any appeal of the trial court's final order and the basis for relief was *Byrnes*, an appellate decision that was issued after the entry of the trial court's final order. Accordingly, DHHS's argument concerning *Byrnes* was legally deficient on its face.

The DHHS's other reason for moving under MCR 2.612(C) was that, because of the court's mistake, the DHHS had not been notified of the entry of the December 16, 2019 final order. The DHHS asserted that this mistake deprived it of an opportunity to appeal as of right to this Court. Taking the DHHS's factual allegations as true—that it did not receive notice that the December 16, 2019 order had been entered until January 15, 2020—this fact does not necessarily preclude an appeal of right to this Court. As plaintiffs note, MCR 7.204(A)(3) states:

> Where service of the judgment or order on appellant was delayed beyond the time stated in MCR 2.602, the claim of appeal must be accompanied by an affidavit setting forth facts showing that the service was beyond the time stated in MCR 2.602. Appellee may file an opposing affidavit within 14 days after being served with the claim of appeal and affidavit. If the Court of Appeals finds that service of the judgment or order was delayed beyond the time stated in MCR 2.602 and the claim of appeal was filed within 14 days after service of the judgment or order, the claim of appeal will be deemed timely.

Thus, even if the DHHS was not timely served, it could have invoked MCR 7.204(A)(3) to file its claim of appeal. Consequently, the DHHS's position that the effect of the error resulted in it being barred from filing a claim of appeal of right is not accurate. After receiving notice on January 15, 2020, of the trial court's final order, the DHHS did not attempt to appeal as of right within 14 days, or by January 29. Instead, it waited 27 days to file its motion for relief from judgment in the trial court on February 11. Accordingly, the DHHS's claim that the delay in receiving notice of the entry of the order precluded the DHHS from appealing as of right to this Court is devoid of legal merit.

Moreover, the trial court rejected the DHHS's factual assertion that it never received a copy of the final order, noting that the order appeared in the register of actions and in the e-filing system.

---

[5] *Byrnes* was decided on December 19, 2019, but was not approved for publication until February 4, 2020, almost two months after the trial court entered the December 16, 2019 final order.

Review of the register of actions submitted with the DHHS's motion shows that the December 16, 2019 order had been signed and filed on that date.[6] Additionally, the e-filing system shows that the proof of service for the order was emailed to the DHHS's counsel. Thus, we cannot conclude that the trial court clearly erred in its factual finding.

Plaintiffs sought sanctions under MCR 1.109(E), which provides, in pertinent part:

> (5) *Effect of Signature*. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;
>
> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> (6) *Sanctions for Violation*. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

Although the DHHS's motion for relief from judgment was properly denied, that does not necessarily mean that the DHHS should have been sanctioned for filing a frivolous document. See *Grass Lake Improvement Bd v Dep't of Environmental Quality*, 316 Mich App 356, 365; 891 NW2d 884 (2016) (quotation marks and citation omitted) ("A claim is not frivolous merely because the party advancing the claim does not prevail on it."). Instead, as MCR 1.109(E)(5) and (6) describe, sanctions are appropriate when, among other things, the party had no reasonable basis to believe that the facts underlying the party's legal position were true or the party's legal position was devoid of arguable legal merit. See also *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015).

At the hearing on the DHHS's motion for relief from judgment, plaintiffs' counsel requested that the trial court impose sanctions because the motion was frivolous. The trial court provided two alternative reasons for finding that the motion was frivolous:

> [*Plaintiffs' Counsel*]: Your Honor, if I may, this case has been closed. The proper procedure would have been . . . for [the DHHS's counsel] to file a motion to

---

[6] An entry on December 16, 2019 states, "**Final – Miscellaneous Disposition, Signed and Filed**."

reopen the case and then ask for his relief.  If you deny his motion to reopen the case, I think that's probably the appropriate remedy.

        *The Court*:  Right, 'cause this case is closed . . . .  This case is closed and I'm not reopening it.

*  *  *

        [*Plaintiffs' Counsel*]:  In regards to sanctions, Judge, I don't take this matter lightly. . . .  [The DHHS's counsel] is trying to use this case that was decided and published long after your evidentiary hearing.

        *The Court*:  Right.  Because, like I said, we have finished every—this case was closed, done, finalized in December.  There was no Claim of Appeal.  Oh, I—that's not my concern but it was closed, finalized.  I had had the evidentiary hearing, between the October and the December 6th [sic] date, when I entered my final order.  This case came out February 4th, 2020.  You can't have retroactivity affect [sic].  It cannot and it does not.

*  *  *

        [*The DHHS's Counsel*]:  If I may respond, your Honor.  The motion that was brought today is consistent with our rights, under MCR 2.6112 [sic].

        *The Court*:  How?  The case is closed.  This it's a dead -- you're beating a dead horse.  This case is closed.  It's closed.  It's closed.  It was closed as of my December 6th [sic] order.  It's closed. . . .

*  *  *

        *The Court*:  . . . And, like I said, this case was closed.  Time has run.  There's no basis for the Court to reenter it.  As [the DHHS's counsel] tried to articulate, he—say[s] he has a—a year to get the relief from the judgment.  This is—this is—it's really mind-boggling because the fact of the matter remains is anybody could open a case if new law comes down.  That's not what—that's not what this is intended to do when you get relief from a judgment.  So, no the Court is denying relief from the judgment and it does not mean that you get another bite of the apple.  The case is closed.  This is a dead horse.  That does not renew the time period for appeal.  It does not.  The appeal period has run.  That ship has sailed.

The basis for the trial court's finding of a frivolous motion is not explicitly clear.  The court on the one hand alluded to the fact that counsel could not rely on subsequently issued appellate decisions in moving for relief under MCR 2.612, but it also repeatedly stated that "the case is closed," implying that because it is closed, it cannot be reopened.  The court also seemed to accept plaintiffs' assertion that the proper procedure for the DHHS would have been to have moved to reopen the case and then move for relief from judgment.

-7-

The trial court's reliance on the fact that the case was closed is highly dubious. Following that premise to its logical end, no party could ever obtain relief from judgment under MCR 2.612(C) once a case was closed. This premise is patently wrong. See MCR 2.612(C)(1) (emphasis added) ("[T]he court may relieve a party or the legal representative of a party from a *final* judgment . . . ."). Notably, MCR 2.612 does not mention any such extra requirements and instead simply states that a party can seek relief "[o]n motion and on just terms," MCR 2.612(C)(1), and that the motion must be made within a reasonable time, MCR 2.612(C)(2).[7] Additionally, this Court has stated that the vehicle to "reopen" a case is MCR 2.612(C) itself. *Sprague v Buhagiar*, 213 Mich App 310, 314; 539 NW2d 587 (1995).

However, the trial court's rejection of the DHHS's position that it could obtain relief from the final order based on a subsequently issued decision of this Court is correct. As already explained, "relief from judgment under MCR 2.612(C)(1)(f) is inappropriate where a party has not sought appellate review of a trial court's final order and the basis for relief from judgment is a subsequent appellate decision in a different case." *Farley*, 287 Mich App at 8. On appeal, the DHHS spends a great deal of time arguing that *Byrnes* clearly establishes that the trial court erred. However, the DHHS does not spend any time arguing that a subsequently released case can be a proper basis to obtain relief from judgment under MCR 2.612(C)(1)(f). Therefore, while taking the trial court's statements at the hearing as implicitly finding that the DHHS's motion was frivolous because this portion of the motion was devoid of arguable legal merit, the trial court's finding of frivolousness is not clearly erroneous on this point.

Further, the fact that the trial court may have erroneously relied on the status of the case being "closed" does not invalidate the frivolous nature of the other basis for the motion. Cf. *In re Costs & Attorney Fees*, 250 Mich App 89, 103; 645 NW2d 697 (2002) (holding that the assertion of a frivolous defense is subject to sanctions even if there were additional, valid defenses asserted). Accordingly, the trial court did not abuse its discretion by granting plaintiffs' and defendants' requests for sanctions.

III. SETTLEMENT ALLOCATION

A. PAST MEDICAL EXPENSES

In Docket No. 353353, the DHHS argues that the trial court erred when it, in effect, limited the DHHS's recovery to the portion of the settlement attributable to Jeanette's past medical expenses. We disagree.

This issue primarily involves matters of statutory interpretation, which this Court reviews de novo. *Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006).

Medicaid is a program that provides medical assistance for the medically indigent under title XIX, 42 USC 1396 *et seq*., of the Social Security Act. MCL 400.105(1); *Workman v DAIIE*, 404 Mich 477, 500; 274 NW2d 373 (1979). The

---

[7] But if the motion was brought under Subrule (C)(1)(a), (b), or (c), then the motion must have been brought with one year of the challenged judgment or order. MCR 2.612(C)(2).

Medicaid program is a cooperative program funded by federal and state funds, and states participating in the program must make reasonable efforts to ascertain the legal liability of third parties to pay for the recipient's medical care. 42 USC 1396a(a)(25)(A). When legal liability is found to exist, the state is to seek reimbursement. 42 USC 1396a(a)(25)(B). To facilitate the state's reimbursement from liable third parties, the state must enact laws under which it is deemed to have acquired the right to such recovery. 42 USC 1396a(a)(25)(H). Accordingly, a state's Medicaid plan must require the recipient to assign to the state any rights to payment for medical care from any third party as a condition of eligibility for Medicaid. 42 USC 1396k(a)(1)(A). [*Neal v Detroit Receiving Hosp*, 319 Mich App 557, 564-565; 903 NW2d 832 (2017).]

"In an effort to comply with federal requirements of the Medicaid program, Michigan enacted MCL 400.106, which includes the state's subrogation and assignment rights related to a third party's liability for a recipient's medical care." *Id.* at 565. MCL 400.106(8) provides:

> The department has first priority against the proceeds of the net recovery from the settlement or judgment in an action settled in which notice has been provided under subsection (3). A contracted health plan has priority immediately after the department in an action settled in which notice has been provided under subsection (3). The department and a contracted health plan shall recover the full cost of expenses paid under this act unless the department or the contracted health plan agrees to accept an amount less than the full amount. If the individual would recover less against the proceeds of the net recovery than the expenses paid under this act, the department or the contracted health plan, and the individual shall share equally in the proceeds of the net recovery. The department or a contracted health plan is not required to pay an attorney fee on the net recovery. As used in this subsection, "net recovery" means the total settlement or judgment less the costs and fees incurred by or on behalf of the individual who obtains the settlement or judgment.

However, the provision, "The department and a contracted health plan shall recover the full cost of expenses paid under this act unless the department or the contracted health plan agrees to accept an amount less than the full amount," cannot be read as allowing the DHHS to recover from any portion of a person's settlement. That is because the federal anti-lien statute, 42 USC 1396p(a)(1)[8] preempts such a reach. *Neal*, 319 Mich App at 572-573, 578.[9] This Court noted, "As the United States Supreme Court made clear . . . , states may not enact statutory provisions designed to recover medical expenditures from the tort proceeds received by the Medicaid

---

[8] 42 USC 1396p(a)(1) states that "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan . . . ."

[9] In making its ruling, the *Neal* Court cited and quoted MCL 400.106(5) regarding the "shall recover the full costs of expenses paid" provision, but that provision is now found in MCL 400.106(8). See 2018 PA 511, effective December 28, 2018.

recipients that are not designated as payment or reimbursement for medical expenses incurred by the recipient." *Id*. at 572, citing *Arkansas Dep't of Health & Human Servs v Ahlborn*, 547 US 268, 280-282; 126 S Ct 1752; 164 L Ed 2d 459 (2006).

In *Ahlborn*, the Medicaid recipient sued the alleged tortfeasors, seeking damages of past medical costs, future medical expenses, permanent physical injury, past and future pain and suffering, past loss of earnings, and permanent impairment of the ability to earn income in the future. *Ahlborn*, 547 US at 273. The Medicaid recipient and the alleged tortfeasors settled for $550,000, but did not allocate the settlement to any of the damages' categories. *Id*. at 274. The parties stipulated that the amount for past medical expenses from the settlement was $35,581.47. *Id*. at 274, 280.[10] The Arkansas Department of Health and Human Services (ADHS) thereafter asserted a lien for the full amount of the payments it had made for the recipient's care in the amount of $215,645.30. *Id*. But to the extent Arkansas's statute allowed it to recover from other portions of the settlement proceeds, i.e., portions not allocated to medical expenses, it was preempted by federal law. *Id*. at 280-282.

In *Wos*, the United States Supreme Court held that a North Carolina statute that created an irrebuttable presumption that one-third of a Medicaid recipient's tort recovery is attributable to medical expenses was preempted by the federal anti-lien statute. *Wos*, 568 US at 632, 636. One of the problems with the North Carolina statute was that it did not provide a mechanism for determining whether that one-third amount was a reasonable approximation for any particular case. *Id*. at 637. The Court rejected North Carolina's argument that holding "mini-trials" to divide settlement proceeds between medical and nonmedical expenses would be "wasteful, time consuming, and costly." *Id*. at 641. *Wos* has little application to this case because the sole question was whether North Carolina's irrebuttable presumption was preempted. The Court did not have to address, and in fact did not address, whether the medical expenses portion of a settlement had to be further divided into past and future medical expenses.

In *Neal*, this Court held that to the extent that MCL 600.106(5), now MCL 600.106(8), allows the state to recover the full cost of Medicaid expenses paid, regardless of the allocation of settlement proceeds, it was preempted by the federal anti-lien statute, 42 USC 1396p(a)(1). *Neal*, 319 Mich App at 578. The trial court, consistent with Michigan's statute allowing a contracted health plan to "recover the full cost of expenses paid," permitted the intervening health plan to fully recover from the Medicaid recipient's tort settlement without conducting any proceedings to determine how the settlement proceeds should be allocated among the different classes of damages, including medical expenses. *Id*. at 561, 564, 571. This Court reversed and remanded for the trial court to hold an evidentiary hearing to determine how the settlement should be

---

[10] Although the *Ahlborn* Court stated at one point that this $35,581.47 value represented "compensation for medical expenses," *Ahlborn*, 547 US at 280, it previously noted that the recipient had argued that the ADHS could only recover from portions of the settlement for "*past medical expenses*" and that if her position was correct, then the ADHS would only be entitled to this $35,581.47 amount, *id.* at 274 (emphasis added). Thus, it seems clear that this $35,581.47 from the settlement was for past medical expenses.

allocated among the various types of damages because, under *Ahlborn*, the health plan could only recover its lien from the portion of the settlement allocated for medical expenses. *Id*. at 576-577.

DHHS relies on this Court's decision in *Byrnes*, which was issued after the trial court in this case entered its final order and was the basis for DHHS's motion for relief from judgment, for the proposition that it can recover its expenditures from any and all medical expenses. In *Byrnes*, this Court noted that "[n]either *Alhborn* nor *Wos* limit 'medical expenses' to past medical costs as a per se rule, and nothing in the relevant statutory language points toward a Congressional intent to exempt plaintiff's future medical expenses from recovery by the DHHS. See 42 USC 1396a(a)(25) and 42 USC 1396k." *Byrnes*, 331 Mich App at 358. This Court suggested that "the 'medical care' described in these provisions is not limited to past medical care but, instead, includes future medical expenses, which are likewise distinct from a plaintiff's other clamed damages." *Id*. But the Court declined to hold that future medical costs always are included in "medical expenses" because in some instances, a plaintiff may not plead any such damages in the complaint.[11] *Id*. However, our Supreme Court vacated any discussion in *Byrnes* related to

> the inclusion of future medical expenses in the amount of medical expenses subject to reimbursement. The issue of whether any amount of a judgment or settlement that is allocated toward future medical expenses is properly included in the calculation of the amount of medical expenses that are subject to reimbursement under 42 USC §§ 1396a(a)(25)(H) and 1396k(a) should first be addressed by the circuit court on remand. [*Byrnes*, ___ Mich ___; 949 NW2d 723 (2020).]

Because our Supreme Court vacated the portion of *Byrnes* discussing the inclusion of future medical expenses, *Byrnes* is not dispositive, as the DHHS suggests.

The resolution of this issue relies exclusively on the interpretation of federal law. MCL 400.106(8) on its face allows the state to recover full reimbursement of its Medicaid expenses and does not limit which type of settlement proceeds the state can invade; but that portion of the statute is preempted by the federal anti-lien statute, 42 USC 1396p(a)(1). *Neal*, 319 Mich App at 570-573. There is no question that the United States Supreme Court in *Ahlborn* limited a state's right to recover Medicaid expenses to portions of a settlement attributed to medical expenses. See *Id*. at 572, citing *Ahlborn*, 547 US at 280-282. The question therefore is whether the federal provisions limit a state to recovering from funds allocated for *past* medical expenses or for *any* medical expenses, which would include future medical expenses.

Although the *Alhborn* Court did not directly address this question, in describing the procedural posture of the case, the Court stated:

---

[11] The proclamation in *Byrnes*, 331 Mich App at 358, that the Medicaid recipient in *Ahlborn* did not plead any such future medical damages in her complaint is perplexing. In *Ahlborn*, the Medicaid recipient filed suit against the two tortfeasors and "claimed damages not only for past medical costs, but also for permanent physical injury; *future medical expenses*; past and future pain, suffering, and mental anguish; past loss of earnings and working time; and permanent impairment of the ability to earn in the future." *Ahlborn*, 547 US at 273 (emphasis added).

On September 30, 2002, Ahlborn filed this action in the United States District Court for the Eastern District of Arkansas seeking a declaration that the lien violated the federal Medicaid laws insofar as its satisfaction would require depletion of compensation for injuries *other than past medical expenses*. To facilitate the District Court's resolution of the legal questions presented, the parties stipulated that Ahlborn's entire claim was reasonably valued at $3,040,708.12; that the settlement amounted to approximately one-sixth of that sum; and that, *if Ahlborn's construction of federal law were correct, ADHS would be entitled to only the portion of the settlement ($35,581.47) that constituted reimbursement for medical payments made*. [*Ahlborn*, 547 US at 274 (emphasis added).]

Thus, although the Court held that 42 USC 1396a(25)(H)[12] of the Medicaid Act "does not sanction an assignment of rights to payment for anything other than medical expenses," *id.* at 281, this was in the context of the medical care proceeds in question being for "medical payments made," *id.* at 274. Additionally, in its final holding, the Court stated, "Federal Medicaid law does not authorize ADHS to assert a lien on Ahlborn's settlement in an amount exceeding $35,581.47." *Id.* at 292. And because that $35,581.47 amount only pertained to past medical expenses, we view the Court's holding as only allowing a state to recover from settlement proceeds allocated to past medical expenses.

The *Neal* Court recognized this view by describing the holding in *Ahlborn* as being "that the Arkansas statutory lien provision was not authorized by federal Medicaid law and actually conflicted with the anti-lien provision that limits a participating state's recovery to tort proceeds designated as payment for reimbursement for medical expenses *incurred by the recipient*." *Neal*, 319 Mich App at 570 (emphasis added). The *Neal* Court later reiterated, "As the United States Supreme Court made clear in *Ahlborn*, states may not enact statutory provisions designed to recover medical expenditures from the tort proceeds received by Medicaid recipients that are not designated as payment or reimbursement for medical expenses *incurred by the recipient*." *Neal*, 319 Mich App at 572 (emphasis added). See also *Morrow v Shah*, 181 Mich App 742, 748; 450 NW2d 96 (1989) (footnote omitted) (holding that the Department of Social Services "may not seek reimbursement for anticipated but unpaid Medicaid benefits covering expenses to be incurred in the future.").

"To 'incur' means 'to become liable or subject to, especially because of one's own actions.' " *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003) (citation and alteration omitted). In *Proudfoot*, the Supreme Court held that the plaintiff did not

---

[12] 42 USC 1396a(a)(25)(H) provides:

> [T]*o the extent that payment has been made under the State plan for medical assistance* in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, *to the extent that payment has been made under the State plan for medical assistance* for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party *for such health care items or services*. [Emphasis added.]

incur expenses for future home improvements because those costs had not been incurred yet, i.e., because those improvements had not happened yet, the plaintiff was not liable for the costs. *Id*. The same principle applies to this case. An award for future medical expenses does not equate to the proposition that the person receiving that award has *incurred* those expenses. Indeed, as *Proudfoot* shows, it is impossible to have done so because there is no current obligation for those expenses. See also *Bronson Health Care Group, Inc v USAA Cas Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 351050); slip op at 7 (holding that a person does not incur medical expenses until medical services are actually provided).

In this case, the trial court held an evidentiary hearing to allocate the settlement amount, in accordance with the above-mentioned caselaw. See *Byrnes*, 331 Mich App at 357 (at the evidentiary hearing, the "the trial court must make a determination of the amount of the Medicaid lien and apportion that from the plaintiff's settlement proceeds taking into consideration the true value of the case and the plaintiff's claimed losses."). The parties stipulated to the total value of plaintiffs' claim and the amount of the DHHS's and Molina's liens for past medical expenses, which totaled $383,694.54. The DHHS argued that because the total cost of medical expenses was 65% of the total value of the case, the apportionment of medical expenses should likewise be 65% of the settlement amount, with no further apportionment between past and future medical expenses.

Instead, the trial court referenced a statement in *Wos* that "a substantial share of the settlement must be allocated . . . [for] future care . . . ." See *Wos*, 568 US at 639. The court continued to note that it was "looking at this from the perspective that this is only dealing with the past medical," and that Jeanette "has benefits going forward that she needs to be compensated for, in order to sustain her life on a daily basis." Because the settlement amount was 21.25% of the total value of plaintiffs' case, the trial court determined that it would be reasonable to similarly reduce "the total past medical expenses" by 21.25%. Thus, the total amount of past medical expenses was reduced to $81,611.73, with the DHHS and Molina being entitled to $57,025.93 and $24,585.80, respectively. Ideally, the trial court would have made an explicit finding that $81,611.73 represented the portion of past medical expenses from the settlement. Regardless, given the context of the trial court's statements, it is clear that the $81,611.73 was attributable to past medical expenses.

As stated in *Ahlborn*, 547 US at 274, 292, and recognized by *Neal*, 319 Mich App at 570, due to the federal anti-lien statute, states are only entitled to recover settlement proceeds that have been allocated to past medical expenses. Accordingly, the DHHS has not shown that the trial court erred by limiting the DHHS's recovery to the portion of the settlement allocated to past medical expenses.

## B. PRO RATA ALLOCATION

The DHHS also argues that the trial court erred by only awarding a portion of the past medical expenses to the DHHS, which was based on a pro rata formula. We disagree.

As an initial matter, this Court disagrees with the premise of the DHHS's argument that the trial court reduced the DHHS's share of the settlement by a pro rata amount. Instead, the trial court determined the portion of the settlement allocated to past medical expenses by using a pro rata approach, i.e., because plaintiffs settled the case for 21.25% of the value of the case, it

followed that 21.25% of the incurred medical expenses were captured in the settlement amount. We find no error in the trial court's approach because there is nothing preventing a court from using such a formula to determine how a settlement should be apportioned. As this Court stated in *Neal*, "At the hearing, the court must determine that amount of the Medicaid lien that may be recovered from plaintiff's settlement proceeds taking into consideration the true value of the case and plaintiff's claimed losses." *Neal*, 319 Mich App at 577. That is precisely what the trial court did.[13]

## C. ATTORNEY FEES AND COSTS

The DHHS finally argues that the trial court erred by reducing the amount that the DHHS could recover based on plaintiffs' attorney fees and costs. We disagree.

The American rule for attorney fees provides that each party is responsible for its own attorney fees, unless there is a statute or court rule expressly authorizing such an award. *Haliw v Sterling Hts*, 471 Mich 700, 707; 691 NW2d 753 (2005). Assuming that there is no such statute or court rule requiring DHHS to pay a portion of a plaintiff's attorney fees,[14] the DHHS avers that the amount it was awarded from the settlement was reduced as a result of plaintiffs' attorney fees. Instead, the record clearly establishes that the settlement amount apportioned to the DHHS was not reduced on account of plaintiffs' attorney fees or costs. While the trial court at one point mentioned how it seemed unfair that all the costs were primarily borne by plaintiffs, thereby implying that the DHHS should have to cover some of those costs, at no point did plaintiffs' costs and attorney fees play a factor in the amount that the trial court ultimately awarded the DHHS. As was explained by the trial court, because the settlement amount was 21.25% of the total value of

---

[13] We note that the DHHS is first in priority to recover from the settlement under MCL 400.106(8). Thus, the DHHS would is entitled to the full amount of the settlement allocated to past medical expenses because the allocation is less than the DHHS's lien. During oral argument, however, the DHHS expressed that it had agreed with Molina regarding the division of the settlement proceeds.

[14] In fact, MCL 400.106(8) states that "[t]he department or a contracted health plan is not required to pay an attorney fee on the net recovery." Further, this Court in *Byrnes* held that a "trial court may not reduce the DHHS's share by a pro rata reduction of attorney fees." *Byrnes*, 331 Mich App at 359. Notably, our Supreme Court only vacated the portion of *Byrnes* that discussed the inclusion of future medical expenses in the amount of medical expenses subject to reimbursement. *Byrnes*, ___ Mich ___; 949 NW2d 723. Thus, this portion of this Court's decision in *Byrnes* discussing attorney fees is still valid and binding. However, it is just as important to note that *Byrnes* was addressing the prior version of MCL 400.106. The amended version of the statute contains an express prohibition of the DHHS paying attorney fees. See 2018 PA 511; MCL 400.106(8).

plaintiffs' case, the court awarded DHHS 21.25% of its $268,357.33 lien, or $57,025.93. Importantly, that 21.25% was calculated by using the total settlement amount before any attorney fees or costs were ever considered. Therefore, contrary to the DHHS's assertion on appeal, attorney fees played no role in the amount that it was awarded.

Affirmed.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood